(No. 20116.—⬛)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STEPHEN OSWALD, Plaintiff in Error.

*Opinion filed June 20, 1930—Rehearing denied October 14, 1930.*

FRANK A. MCDONNELL, and SAM BARTH, (ELYWN E. LONG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county on the charge of burglary and seeks reversal of the judgment on the ground of variance between the indictment and the proof on the question of ownership and errors in rulings on admissibility of evidence and instructing the jury.

Four witnesses testified for the People. William H. P. Wetzel testified that on July 7, 1928, the day of the alleged crime, he was in the radio business at 1309-11 West Sixty-ninth street; that the name of his place of business was the Able Battery and Radio Station; that on that evening he left his store about 10:30 and locked it for the night, and that the next morning he returned about a quarter of six and found the front windows broken and the door broken in. The store was in disorder and one radio of the value of $275 was missing. He testified that he saw this radio two days later at the Englewood police station and determined by the numbers which it bore that it was his radio.

Christ Doepulois, a watchman, testified that on the morning of July 8, 1928, he was proceeding from his night's employment, when, on arriving in front of the store at 1309 West Sixty-ninth street, he noticed that the windows and door had been broken in. At the same time he saw a man about 300 to 350 feet away carrying a radio on his

back along the side of a building; that in a few minutes this same man came back and hid himself in a doorway of the building; that the witness went back to his place of employment and called the police, changed his clothes to his uniform and ran back to the scene; that the officers were there when he arrived and had the radio on the wagon; that he saw a Yellow cab standing in front of the residence where he had seen this man go into the doorway, and that while he was there he saw plaintiff in error come from the house with two women and walk in the direction of the cab, when he was arrested. He testified that plaintiff in error's hands were wrapped with a cloth covered with blood, which seemed to run down on him considerably, and that as soon as he saw plaintiff in error he ran over to him and the officers did likewise. He identified plaintiff in error as the man he saw carrying the radio. He also testified that in addition to the broken window and door there was a considerable amount of blood in the store and outside on the sidewalk; that he also noticed blood in the doorway from which plaintiff in error came when arrested and into which he had disappeared, and blood on the stairway. He testified positively that this was the same man that he saw at that time. He stated that he saw him go into the side of the building in which the radio was found. On cross-examination he stated that he did not see the face of plaintiff in error but saw him as he was carrying the radio and as he was coming back and went into the entrance to the building where he was arrested.

Police officer George B. McClelland testified that in answer to a call he went with other officers to 6846 South Ada street, where they found a young woman and a young man. He asked them if they saw anyone carrying a radio, and they said they did not but they saw a man going into the alley. He testified that the officers drove around into the alley and found the door of a basement room of the building partly open. They saw a new radio standing in-

side the door. They went in and finding no one there started to take the radio. As they were going out a lady came in and said she did not know how the radio got in there. He testified that after they had put the radio in the wagon a young woman, apparently intoxicated, came upon the lawn near by; that she had some blood on her white slippers; that he asked her where she got it, and that she said up at a wedding. He asked who was with her, and she replied that she would not tell. The witness put the woman and her sister, who came up at that time, in the wagon. He stated that they found there was a radio place on Sixty-ninth street and drove around there and saw the window and door to have been broken in; that before they left the store the officers received word that there was a man in the house where they had gotten the radio; that they returned there and plaintiff in error came out of the house with his arm bandaged, with blood still running from underneath the bandage; that he was under the influence of liquor and that they put him in the wagon after putting handcuffs on him. The witness further testified that he got blood-stains on himself from handling plaintiff in error, and that they took him to the Bridewell Hospital, had his wounds dressed and returned him to the police station.

Officer Gallagher testified to having gone with McClelland in response to the call and that they arrested plaintiff in error as he was about to take a taxicab; that he had his hand cut and bandaged up; that he had been drinking, and that they found the radio as McClelland had testified.

Plaintiff in error took the stand and testified that on the night of July 7 he had been at a wedding party at South Lincoln avenue; that about 4:00 o'clock in the morning he had cut his wrist in opening a bottle of pop; that a young lady at the wedding urged him to take her home; that he did so, and that he was arrested about 6:15 A. M. in the neighborhood of the residence of the girl who had been at the wedding party with him. He testified that he did not know

anything about a radio, and in answer to the question whether he recalled entering the premises of Wetzel, he replied that he did not. This was all of the testimony.

It is first contended that there was a variance between the indictment and the proof, and that while the indictment alleged the radio to be the property of William H. P. Wetzel and Roy H. Cromwell, co-partners, the proof shows that it was the property of William H. P. Wetzel, who was doing business under the name of the Able Battery and Radio Station, and counsel urge that this variance is fatal. It appears from the record that this objection was not at any time raised on the trial, either at the close of the evidence or on motion for a new trial. At no time was the variance between the proof and allegation of the indictment brought to the attention of the trial court. It is therefore not available to plaintiff in error here. *People* v. *Cunningham,* 300 Ill. 376; *People* v. *Melnick,* 274 id. 616; *Greene* v. *People,* 182 id. 278.

It is also argued that it was error to refuse defendant's third instruction. That instruction is as follows:

"The court instructs the jury that the question of fact, together with other questions of fact, is the question of identification, which was relied upon in part by the State and denied by the defendant, Steve Oswald. If you believe from all the testimony in this case that under the stress and excitement of the acts complained of by the State's witnesses, they are such as would raise in your mind a reasonable doubt as to the truth or exactness of the identification by the State's witnesses, it is your duty to give the defendant, Steve Oswald, the benefit of such doubt and return a verdict of not guilty."

It was not error to refuse to give this instruction as it assumed as a fact that there was stress and excitement on the part of the State's witnesses, and the instruction was also obscure in meaning. *Campbell* v. *People,* 109 Ill. 565; *People* v. *Bolik,* 241 id. 394.

Error is assigned on refusal to give plaintiff in error's fourth instruction. This instruction told the jury that the number of witnesses, alone, testifying for one side or the other, should not determine the question of guilt or innocence of the defendant, and "simply because the prosecution may have produced more witnesses than the defense is no reason why you should believe the prosecution has proven its case beyond all reasonable doubt; but before you can determine the guilt or innocence of the defendant, Steve Oswald, it is your duty to be satisfied of that fact after considering all of the evidence, both that for the prosecution and that for the defense." This instruction was erroneous for the reason that the number of witnesses testifying to a fact may be considered with all other facts appearing in evidence. Though not controlling, it may be a reason for believing that the necessary proof has been made.

Plaintiff in error's fifth refused instruction told the jury that the burden of proof is not changed when the defendant undertakes to prove an alibi, and if by reason of the evidence in relation to such alibi the jury shall entertain a reasonable doubt as to defendant's guilt, he should be acquitted although the jury may not be able to find that the alibi was fully proved. This instruction is open to the objection that it is confusing. Some confusion has existed as to what is termed "shifting of the burden of proof." In a strict sense the burden of proof never shifts from the People to the defendant, but in the sense that the term "burden of proof" is used as meaning the duty to go forward with proof it rests upon the defendant seeking the benefit of his defense of alibi. He is not required to establish an alibi beyond a reasonable doubt, but it is sufficient if, when considered with all the evidence in the case, it raises a reasonable doubt in the minds of the jury as to whether the accused was present at the scene of the crime at the time it was committed. While this instruction appar-

ently attempted to state a correct rule of law, it was confusing and it was not error to refuse it.

It is also argued that the evidence is insufficient to sustain the verdict. The question of the guilt of the defendant was a matter for the jury, and we are unable to say that they were not justified in returning a verdict of guilty in this case.

The judgment will therefore be affirmed.

*Judgment affirmed.*