Herbert M. Pozdro, Administrator of the Estate of Carol Rose Pozdro and of the Estate of Robert Allan Pozdro, Plaintiff-Appellant, v. John Dynowski, Defendant-Appellee.

Gen. No. 51,219.

First District, First Division.

May 1, 1967.

John T. Chadwell, Jr., of Chicago (Chadwell, Keck, Kayser, Ruggles & McLaren, of counsel), for appellant.

George F. Barrett, of Chicago (Donald J. Duffy, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This action was brought by Herbert M. Pozdro, as Administrator of the Estates of his two deceased children, under the Illinois Wrongful Death Act, (Ill Rev Stats 1965, c 70, §§ 1–2) to recover damages for their deaths in an automobile accident allegedly due to defendant's negligence. The jury trial resulted in a verdict in favor of the defendant, John Leon Dynowski, and against both the plaintiff-Administrator and the occupants of a third car. Judgment was entered on the verdict for defendant and Herbert M. Pozdro, Administrator, appeals.

The collision occurred on July 9, 1960, at about 8:00 p. m. on Route No. 53, which runs north-south where Industrial Road enters from the east. Mary R. Pozdro was driving south on Route No. 53 with Carol and Robert Pozdro, the deceased children, as passengers. Mrs. Pozdro was attempting a left-hand turn into Industrial Road when struck by defendant's automobile which was proceeding north on the same highway.

Plaintiff contends that (1) the verdict and judgment are against the manifest weight of the evidence; (2)

the court erred in giving certain instructions to the jury; and (3) defense counsel committed error by going beyond the record of the trial in his closing argument to the jury.

The plaintiff called the defendant, John Dynowski, under section 60 of the Civil Practice Act. He testified that he and his uncle, Casimer Dynowski, had decided to go fishing that evening, and on the way they had a glass of beer and bought a six-pack of beer which was placed in the back seat of the car. He said that he was driving north on a two-lane highway, Route No. 53, at 40 to 45 miles per hour, that he had his lights on because it was dusk, that the visibility was clear and no cars were in front of him, and that he could have stopped his car within 40 to 45 feet. He said he first saw the Pozdro car a block north of Industrial Road, and "When I was about 30 to 35 feet from the intersection when I seen Mrs. Pozdro. Then she turned in front of me and that was all I remember." He testified further that she appeared to be driving 5 to 10 miles an hour slower than he was, but he said there was no indication that she was slowing down to make the left-hand turn. He said he didn't slow up, but applied his brakes and felt them catching just before he hit her.

Casimer Dynowski, defendant's uncle, was also called as a witness by the plaintiff under section 60 and he testified that they had a glass of beer and bought a six-pack of beer to go fishing with. He said he didn't remember any part of the accident.

Police Sergeant James Ruggio, Jr. testified that he was summoned by radio to the accident scene and arrived at 8:22 p. m. He prepared a drawing of the scene at that time and said that the road is drawn to a scale of one inch to 20 feet, but that the vehicles were not to scale. He said he found four Budweiser cans in the Dynowski car, three full small cans and one larger

empty can. When questioned on recross-examination he denied finding a full six-pack in the car and didn't remember testifying at the Coroner's Inquest that a full six-pack was found or that the empty cans were rusty and dirty. He said he smelled no odor in the opened cans.

Daniel Salberg testified that he, his wife, the Culpeppers and Kellys were driving in a southerly direction about 40 miles per hour on Route No. 53, about 200 feet behind the Pozdro car, which he said slowed down to 15 miles per hour before it made a normal left-hand turn on Industrial Road. Previous to this he saw defendant's car, but could not determine the speed. He said the Pozdro car was in the middle of Industrial Road at the time of the impact and the defendant's car careened off the Pozdro car causing the back end to strike him head-on. He estimated that the defendant was traveling about 80 miles an hour after the impact. He placed the Pozdro car in the middle of the north lane at the time of the collision. On cross-examination he said he did not have an opinion of Dynowski's speed at the time of impact, but he formed an opinion of the speed of defendant's car, "By the damage" and "That and seeing the car," one and one-half months later when he got out of the hospital.

William H. Kelly testified that he was sitting on the front side of the Salberg car. He didn't remember seeing a car in front of them or seeing an automobile making a left-hand turn in front of them. He said when their car was about 100 feet from Industrial Road he noticed another car in the northbound lane, already turning. When asked whether he could determine the speed of defendant's car he answered, "I know it was going very fast. I would say, probably, over seventy-five miles an hour." On cross-examination he was questioned about his testimony on a pretrial deposition. It appears therein

83

that the following questions were asked and answered as follows:

Q. How long would you say you observed the Cadillac (defendant's car) and Chevy (Pozdro car) before they actually collided?

A. One or two seconds.

Q. Do you have an opinion as to the speed at that time of the car that you were in?

A. I would guess around thirty miles an hour.

Q. Do you have an opinion as to the Cadillac speed?

A. No.

When asked whether he made those answers he said he didn't recall, but if it was in the deposition he must have made it. He also testified that the Pozdro car and the defendant's car were thirty or forty feet apart when he first saw the two cars.

Hazel Salberg, who was also in the front seat, testified that she was lighting a cigarette when she saw Mrs. Pozdro make her turn and at that time the defendant's car was on the other side of Industrial Road. She could not describe the speed of the defendant's car exactly, but she said it was "like a racing car going around the curve, you know, just fast." On cross-examination she testified that Mrs. Pozdro's car had completed a normal turn into Industrial Park before it was struck. She said she first saw the defendant's car when it was about one hundred feet from Industrial Road. She was asked:

Q. When was it that you formed an opinion as to his speed that you expressed yesterday?

A. When he came at us.

Q. This is after he collided with Mrs. Pozdro?

A. Yes.

Q. Before that time, you had no idea or no opinion as to his speed, did you?

A. I couldn't say, no.

Donald Prium testified for the plaintiff and said he arrived at the collision site shortly after it happened. He said he walked up to John Dynowski and could smell that he had been drinking. On cross-examination he said he couldn't tell how many drinks Dynowski might have had, or what he had been drinking but that it was just something alcoholic. Mr. and Mrs. Culpepper, who didn't see how the accident happened, and plaintiff-Administrator, Herbert Pozdro, also testified for the plaintiffs, but only as to the issue of damages.

The defense first called Margaret Rojas, who was the court reporter at the Coroner's Inquest, and she said that her notes showed that Sergeant Ruggio testified that he found a full unopened six-pack and some rusty opened beer cans in the Dynowski car. John Dynowski testified in his own behalf that he was about a block from Industrial Road when he saw a car coming south which was also about a block from Industrial Road, and when that car was 30 or 40 feet from him it turned into his, the northbound lane. He said he reached for his brakes, but the collision occurred within a split second. He also said that Mrs. Pozdro was driving normally.

The Administrator first contends that the verdict of the jury was clearly against the manifest weight of the evidence. He argues that defendant's mere denial of the testimony against him does not support a verdict in his favor where the overwhelming weight of the evidence showed that defendant was negligent and that his negligence was a proximate cause of the accident. Moreover, he says two of the witnesses were wholly disinterested and the testimony of all five was strongly corroborated. He argues that:

The excessive speed of defendant's car prior to or/and at impact with the Pozdro car was testified to by Daniel Salberg, William Kelly and Hazel Salberg, all occurrence witnesses. Both Mr. and Mrs. Salberg also testified that they saw Mrs. Pozdro make her turn prior to the accident and that it was normal and at moderate speed. Even defendant admitted that . . . Mrs. Pozdro was driving normally.

We have carefully examined the record and conclude that the evidence as to liability was conflicting. The defendant testified that he was traveling north at 40 to 45 miles per hour in a 45 miles per hour speed zone, and that the Pozdro car turned in front of him when he was 30 to 40 feet from her. Daniel Salberg who testified that the defendant's car was traveling at 80 miles an hour admitted that when he first saw the defendant's car he did not have an opinion as to its speed, and that he formed his opinion as to its speed only after observing the damage to the vehicles when he was released from the hospital six weeks later. He also said that the defendant's car was 50 to 75 feet south of Industrial Road when the Pozdro car turned, and while he later testified that the turn was normal he admitted that he was not taking into consideration the relationship of the other vehicles to the Pozdro car. William Kelly testified that the defendant's car was traveling at about 75 miles per hour, but in his deposition statement he said he had only seen the car for about one or two seconds before the accident and had no opinion as to speed at that time. He also said the defendant's car was about 30 to 40 feet away when he saw the Pozdro car for the first time, but that he had not seen the Pozdro car turning. Mrs. Salberg testified that she didn't know exactly what speed the defendant's car was going, just fast like a racing car. On cross-examination she said she formed an opin-

ion as to defendant's speed from the speed he came towards her after he collided with Mrs. Pozdro.

It was within the province of the jury, under the facts and circumstances of this case, to decide whether the defendant was negligent. We cannot say, as we must, to reverse a verdict of a jury on disputed factual testimony, that an opposite conclusion is clearly evident, plain and indisputable. Lowe v. Gray, 39 Ill App2d 345, 188 NE2d 890. A court of review must take into consideration not only the verdict of the jury, but also the fact that the trial judge who also saw and heard the witnesses and argument of plaintiff's attorney denied the plaintiff's post-trial motions. Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 180 NE2d 347. In view of the conflict in the testimony as to the circumstances of the collision, we think this was a case specifically for determination by a jury. The manner in which the accident occurred was in dispute and in reaching their verdict the jurors apparently believed the defendant. There are many things which a jury and the court observe on the trial that do not appear from the printed record, such as the appearance of the witnesses and their manner of testifying. They are in a better position to determine the truth of the matter in controversy than a court of review. The weight to be given to the testimony of the witnesses is a matter for the triers of the fact and we cannot say the verdict and the judgment is manifestly against the weight of the evidence.

It is next contended that the court erred in giving defendant's instruction number 5 over plaintiff's objection. The instruction was taken from IPI 2.07 and reads as follows:

In deciding whether any fact had been proved, it is proper to consider the number of witnesses testify-

ing on one side or the other as to that fact, but the number of witnesses alone is not conclusive if the testimony of the lesser number is more convincing.

The Administrator charges that it was prejudicial error to give this instruction under the circumstances of the case as it confused the jury since the defendant was the only witness to substantiate his side of the story, while five witnesses, two of them wholly disinterested, testified in support of plaintiff's version of the accident. While plaintiff concedes this is an IPI instruction it is urged that it was inappropriate and erroneously given under the facts and circumstances.

The record shows that IPI instruction 2.01 on credibility of witnesses was also given together with 2.07 as recommended in IPI. These instructions taken together fairly and correctly state the law. It is argued in plaintiff's reply brief that this instruction fails to properly explain the importance of the number of witnesses testifying on one side. On the contrary, as pointed out in IPI, it is for the jury to determine to what extent each witness is credible, and that it is error to give an instruction on that subject, so worded, that under the circumstances of the case the jury might readily infer the court believed the witnesses for one side to be more credible than the witnesses for the other side. For that reason also, the Committee recommended that the instruction heretofore sometimes given, that the testimony of one credible witness may be entitled to more weight than the testimony of many others, not be given.

It is further contended that the court erred in giving instruction number 11, which is IPI 21.02, over plaintiff's objection. It is argued that by giving this instruction the jury was misled into believing that if Mary

Pozdro was negligent at all, the defendant was not liable whether or not he was negligent. We do not agree. In addition to this instruction plaintiff tendered, and the court gave, the following instruction:

> More than one person may be to blame for causing injury. If you believe that the defendant was negligent and that his negligence caused injuries to the plaintiff, it is not enough that some third person may also have been to blame.

The court also gave IPI instruction 15.01 tendered by plaintiff which stated that proximate cause need not be the only cause, nor the last or nearest cause. We believe that the jury was not confused and that these instructions taken together fairly and correctly stated the law.

■ It is also urged that the defense counsel went beyond the record of the trial in his closing argument to the jury. This contention arises from the fact that counsel used a ruler to attack a drawing of the accident scene prepared by Police Sergeant Ruggio as not being to scale. The record shows that defense counsel requested the court's permission to use a ruler in discussing the exhibit and there being no objection the court gave him permission. Nor was there any objection made when defense counsel illustrated the inaccuracy of the document which is now claimed to be error. Under the circumstances we perceive no error. We have examined the cited cases on this point and find them inapplicable. It is further urged that defense counsel in his closing argument improperly commented on the negligence of Mrs. Pozdro. We have examined the record on this point and suffice it to say that we see no merit to this contention.

Accordingly the judgment of the Circuit Court should be affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.