Gerald Morrison, for the Use and Benefit of Rose M. Morrison, et al., and Rose M. Morrison, Individually, Plaintiffs-Appellants, v. Ernest Mitchell, Defendant-Appellee.

Gen. No. 67–33.

Third District.

July 8, 1968.

Mark P. Meers and Joseph Duffy, of Joliet, for appellants.

Peter H. Lousberg, of Rock Island, for appellee.

ALLOY, P. J.

This is an appeal from a judgment of the Circuit Court of Will County in favor of defendant, Ernest Mitchell, as against plaintiffs following a jury verdict for defendant in a dramshop action. Action was instituted under the Dram Shop Act for loss of means of support. The case was tried by a jury on the issue of liability alone.

The facts as disclosed from the record indicate that Gerald Morrison (the alleged intoxicated individual) on Easter Sunday, April 14, 1963, spent the day at his mother-in-law's home beginning about 1:30 p. m. The Morrison family consisted of Gerald Morrison, the father, his wife Rose Morrison, and four children ranging in ages from 4 up to 12 years of age. After a family dinner around 2:00 p. m., Gerald Morrison apparently consumed about four bottles of beer and two shots of

whiskey at the home. Sometime early in the evening between 6:30 and 8:30 p. m., Gerald Morrison took his wife and children home and then left, intending to go to a Henry Gebhart's home. On his way to such home, Morrison stopped at the tavern of the defendant Ernest Mitchell (about 8:30 p. m. according to the testimony of Morrison but between 5:30 and 6:00 p. m. according to the bartender on duty). While at the tavern, Morrison had about a glass and a half of beer according to his testimony. The evidence of defendant indicated that Morrison appeared to have been drinking but did not appear to be totally intoxicated; that he had about enough to "wander home."

There was testimony on the part of Morrison that he got some carry-out beer from a self-service cooler in the tavern. There was direct evidence that there was no self-service cooler in the tavern and carry-out beer was in a cooler behind the bar which was not accessible to customers and could only be reached by going through a separate room which had a door entering the back portion of the bar. The door was kept locked. Morrison stated that upon leaving the tavern he had purchased the quart of beer referred to and went to the Gebhart home. Gebhart stated that Morrison arrived at his home about 8:00 p. m. with a quart of beer. Morrison stayed in the Gebhart home about 20 minutes during which time each of the parties had a can of beer. Gebhart stated that in his opinion Morrison was intoxicated.

After Morrison left the Gebhart home he was unable to recall anything else until he woke up in a hospital. His loss of memory was attributed by plaintiffs to injuries he received in the accident referred to in this opinion. Morrison was found unconscious by a police officer in his automobile which was up against a utility pole in the City of Joliet on a four-lane blacktopped street. The streets were dry during the period after

Morrison left the Gebhart home and the time of the accident. There was no evidence of tire or skid marks and there was no other automobile in the vicinity which appeared to have been involved in the accident. A nurse at the hospital noted that Morrison was incoherent and that there was a strong alcohol odor upon him. There was evidence, by defendant, that the incoherency which Morrison suffered could be a symptom caused by the head injuries without any alcoholic beverages having been consumed.

On appeal in this Court, plaintiffs contend that the verdict was against the manifest weight of the evidence, and that the verdict was a result of prejudice caused by improper statements of law made by defense counsel in closing arguments.

 The courts of this State have repeatedly reiterated that a jury verdict will not be reversed on the basis of manifest weight of the evidence unless the opposite conclusion is indisputable. In this connection the ruling by a trial court on the manifest weight of the evidence is accorded great weight and a court is reluctant to reverse except for an abuse of discretion under such circumstances. A court of review does not weigh evidence or pass on the credibility of witnesses (Pozdro v. Dynowski, 83 Ill App2d 79, 226 NE2d 377). In the cause before us there was no direct evidence as to the cause of the accident. The manner in which the accident may have occurred was in dispute, and the jurors in reaching their verdict, apparently believed the version contended for by defendant. The jury and the trial judge both had an opportunity to hear the witnesses directly and on review these factors must be given substantial consideration (Jenkins v. Hechtman, 83 Ill App2d 72, 76, 226 NE2d 383).

 We note that in the cause before us the evidence was disputed and several alternative inferences were possible. We cannot say that there was no basis in

335

the evidence to support the jury verdict even though the court itself might have reached an opposite conclusion (Kitten v. Stodden, 76 Ill App2d 177, 221 NE2d 511). The jury had the opportunity to hear the direct testimony of Morrison and to review such contradictions and inconsistencies as may have been noted in his testimony. We are also aware of the fact that in addition to the disputed and conflicting testimony there was actually no direct evidence as to how the accident occurred. The only evidence was that of a police officer who found the Morrison car against the telephone pole at about 10:20 p. m. with Morrison suffering from a head injury. This was at least two hours after Morrison left the Gebhart home. There was no evidence in the record of what Morrison had been doing during that period of time. Under the facts and circumstances, the jury could have inferred that Morrison was not intoxicated. We could have sustained a verdict of the jury finding that intoxication was the cause of the accident, had the jury so concluded, on the record in this case. The finding of the jury, however, that defendant was not guilty could have been based on facts and inferences of record, and, consequently should not be disturbed on review.

■ The second argument made was that the comment in closing argument by attorney for defendant was sufficiently prejudicial to justify a reversal. The jury was instructed in this case, as is usually done, that, in determining the credit to be given to any witness, it could take into account his ability and opportunity to observe, his memory, his manner while testifying, and any interest, bias or prejudice he may have. It was incorporated in the Illinois Pattern Jury Instruction 2.01. During the course of the final argument, counsel for defendant asserted (inadvertently, defense counsel states) that Morrison was trying to get "some money in this case eventually." The attorney

for plaintiff objected at that point that it was a misstatement of law on part of defense counsel. This was recognized and admitted by defendant's counsel immediately and he apologized and stated that Morrison is "not able in this case because of the law, to himself personally get any gains or rewards. It is his family who is the plaintiff, his wife and children who are plaintiffs in this case." Defendant then went on to say that Mr. Morrison had a direct interest in the case. He predicated this on the contention that if plaintiffs were successful there would be a large portion, if not the entire portion, of Gerald Morrison's medical bills paid and also on the basis that damages were requested for loss of means of support. As the record discloses, the attorney for defendant recognized his misstatement of law, apologized for it, and in his explanation told the jury why it was erroneous. There was no repetition of this misstatement after the apology. We see no basis for reversal since the misconduct was not persisted in after objection and in view of the fact that plaintiffs' objection was sustained and defendant acknowledged the error and apologized promptly as indicated herein (Wells v. Gulf, M. & O. R. Co., 82 Ill App2d 30, 226 NE2d 662).

Since we find no reversible error in this cause the judgment of the Circuit Court of Will County will, therefore, be affirmed.

Affirmed.

STOUDER and SCHEINEMAN, JJ., concur.