THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ESTABON ORTIZ, Defendant-Appellant.

Second District    No. 80-212

Opinion filed May 19, 1981.

Geraldine Borja, of Maywood, for appellant.

Eugene L. Stockton, State's Attorney, of Dixon (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HOPF delivered the opinion of the court:

Defendant was convicted of home invasion (Ill. Rev. Stat. 1979, ch. 38, par. 12—11) in a bench trial and sentenced to ten years in the penitentiary. He raises the following issues on appeal: (1) he was not proved guilty beyond a reasonable doubt; (2) he did not understandingly waive his right to trial by jury; (3) he did not receive the effective assistance of counsel at trial; and (4) the trial court failed to consider mitigating circumstances and the rehabilitative potential of defendant in arriving at the 10-year sentence. We affirm.

The State presented four eyewitnesses to the offense. Bobbie Wyatt testified that in the early morning of September 25, 1979, defendant and a companion followed her into her apartment. Defendant had visited her on occasion and the two were sexually intimate. After a few minutes Bobbie told the pair to leave and pushed them out the door. Defendant returned several minutes later and indicated that he wished to have sexual

intercourse with Bobbie. Despite Bobbie's refusals, defendant remained outside the door and placed his hand in his pocket. One of the other residents of the apartment shouted that defendant had a gun. Bobbie then ducked and heard what sounded like a crash or a gun shot. She then saw defendant unlock the door by placing his hand through the broken glass in the door. Defendant had placed one foot in the doorway and was attempting to push his way into the apartment when Allen Bass, a resident of the apartment, pushed the defendant out of the door and fought with him outside. After the fight Bobbie observed defendant enter the apartment and take a record player which, she said, he had given her children as a gift. She testified that she had had three beers during the course of the day preceding the event and that within a few hours before the incident she had shared a marijuana cigarette. She also testified that she was on probation for a forgery conviction.

Judy Mowery, who was in an automobile parked next to Bobbie Wyatt's apartment building, testified next. She testified that she saw defendant, gun in hand, break in the door window of Bobbie's apartment and fire three shots. Prior to breaking the glass he shouted that he wanted his record player. Ms. Mowery further testified that after defendant broke the glass he entered the apartment momentarily. He immediately came back outside with Allen Bass. The two were fighting. During the course of the fight, three shots were fired outside the apartment.

Allen Bass testified that Bobbie Wyatt partially opened the apartment door and the defendant attempted to force his way in. Bass tried to help Bobbie close the door, but was unsuccessful. Thereafter, Bass hit the defendant several times in the face and defendant then pulled out a gun. Defendant stuck his arm through the door, pointed the gun and stated, "I'm going to kill you." Bass then pushed the defendant out the door. A fight ensued, and defendant fired three or four shots. Bass ran back to the apartment and into the bedroom. He then heard two shots fired and the sound of glass breaking. He left the bedroom and observed a man, whom he believed to be defendant, enter the apartment and take the record player.

Vicki Bolton, also a resident of the apartment, testified that she heard Bobbie shouting for help and then observed the defendant outside the front door holding a gun. A shot was fired through the glass in the front door, and defendant then broke the glass with his hands. Defendant reached in through the glass, unlocked the door, placed half of his body in the doorway and fired four or five shots inside the apartment. The defendant was shouting, "I'm going to kill you." The witness heard two shots fired outside the apartment and then observed defendant come back inside and take the record player. Ms. Bolton stated that she had consumed one beer several hours before the incident. At the close of her

testimony the State informed the court that the witness had a prior misdemeanor theft conviction.

Detective Short of the Dixon police department testified that, upon arriving at the scene of the incident, he had observed, among other things, blood all over the inside of the apartment, and what appeared to be bullet holes in the front door glass, front door curtain, ceiling, and far wall. The detective recovered four spent cartridges and two live .25-caliber rounds from the scene. He testified that one of the cartridges along with the two live rounds were recovered from inside the apartment and that another of the spent cartridges was found in the doorway. He stated that the spent cartridges were later determined by the FBI laboratory to have been fired from defendant's gun.

Detective Short further testified that he questioned defendant through an interpreter.

The interpreter testified that when questioned, defendant stated he got into an argument with Allen Bass. Bass pulled his hair and threw him against the door, breaking the glass. Defendant then fired his gun into the ground and in the air to scare Bass. The witness stated that defendant specifically said he did not fire into the house.

Two Rochelle city police officers testified that they met defendant in the Rochelle Hospital emergency room. Defendant had gone to the hospital to have his arm treated which had been badly cut during the incident. The injury had not yet been treated by a doctor when they questioned him. One of the officers read defendant his *Miranda* rights. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) Defendant indicated that he understood, and would waive, those rights. The officers then asked defendant whether he possessed a gun. Defendant replied in the negative but gave the officers permission to search his car. A .25-caliber semiautomatic pistol was later recovered from the car. The officers questioned defendant in English. Defendant replied in broken but intelligible English. He told the officers that once inside Bobbie Wyatt's apartment he fought with someone. He grabbed his stereo and started to run toward the door when someone pushed him into the door and fired shots at him.

Defendant testified in his own behalf. He stated that as he was leaving the apartment he decided to retrieve his record player. The door was still open, and as he attempted to reenter the apartment, Bobbie Wyatt tried to close the door on him. At that point, Allen Bass grabbed the defendant by the hair. Defendant testified that he tried to get away from Bass and fell on the ground. Bass kicked the defendant twice and defendant then pulled a gun from his pocket and fired off to the side. After Bass ran back to the apartment, defendant returned to the apartment and retrieved his record player.

The offense of home invasion is defined as follows:

"Home Invasion. (a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

(2) Intentionally causes any injury to any person or persons within such dwelling place.

⁂ "

Ill. Rev. Stat. 1979, ch. 38, par. 12—11.

Defendant argues that the State failed to prove the elements of this offense. He contends that Bobbie Wyatt and Vickie Bolton were not credible witnesses and that their testimony conflicted with that of Allen Bass. Defendant charges that Wyatt's and Bolton's perception of the event was affected by the intoxicants they had consumed prior to the incident. He also contends that their credibility must be judged in light of their previous criminal convictions. He argues further that in contrast to these witnesses' testimony Allen Bass' testimony supports his account of the incident.

It is well established that in a criminal bench trial it is for the trial court to hear testimony and determine the credibility of witnesses. (*People v. Eichelberger* (1980), 81 Ill. App. 3d 1012, 401 N.E.2d 1208.) Discrepancies and inconsistencies in the testimony affect only the weight to be given that testimony (*People v. Cosey* (1980), 82 Ill. App. 3d 968, 403 N.E.2d 656), and where the evidence is conflicting it is the duty of the trier of fact to resolve the conflict and determine the credibility of the witnesses and the weight to be given their testimony. (*People v. Cages* (1980), 82 Ill. App. 3d 900, 403 N.E.2d 565; *People v. Smith* (1980), 81 Ill. App. 3d 764, 401 N.E.2d 1017.) Under such circumstances the appellate court will not substitute its judgment for the trier of fact. (*People v. Cages.*) Further, whether one acted in self-defense is a question to be determined by a trier of fact (*People v. Walker* (1978), 58 Ill. App. 3d 535, 374 N.E.2d 880), and the trier of fact is not obliged to accept as true testimony concerning self-defense presented by the accused. *People v. Harling* (1975), 29 Ill. App. 3d 1053, 331 N.E.2d 653.

In stating his findings the trial judge noted that prior to the incident Bobbie Wyatt and Vickie Bolton had consumed small amounts of beer and Bobbie Wyatt had smoked part of a marijuana cigarette but stated that there was no evidence that either witness was intoxicated or under the influence of drugs. Although our review of the record suggests the

judge may have miscalculated the amount of beer consumed, there is no indication that the witnesses were intoxicated at the time of the offense. We cannot conclude that the trial court was incorrect in finding the testimony of these witnesses credible. Furthermore, nothing in the record, except for the defendant's own testimony, supports his allegation of self-defense; on the contrary, the State presents strong evidence that prior to firing his pistol while fighting outside with Allen Bass, defendant had threatened the residents with the pistol while attempting to push his way into the apartment. We conclude that the trial court could properly find that defendant performed all the elements of the offense of home invasion.

Defendant next contends that his waiver of a jury trial was not understandingly made. At his arraignment the discussion of a jury trial consisted of the court simply asking defense counsel whether defendant wished a jury trial and defense counsel replying, "Yes." On the day set for trial the court stated that it had been informed that defendant wished to waive his right to a jury trial. The court asked defendant through an interpreter if that was defendant's wish. The following colloquy ensued:

"INTERPRETER: He asked me to repeat that, your Honor.

THE COURT: It has been indicated to the court by counsel for defendant that he desires to waive a jury trial and to proceed to trial before the court or before the judge. Is that what you wish?

INTERPRETER: Yes.

THE COURT: Is that what you wish to do, counsel?

[DEFENSE COUNSEL]: Yes, your Honor.

THE COURT: All right, have your client sign a jury waiver."

A "denial to a defendant of the right to knowingly and understandingly choose between a jury or a bench trial would be a 'plain error or defect' which can be brought to the reviewing court's attention although not raised below." (*People v. Hoover* (1980), 87 Ill. App. 3d 743, 747, 410 N.E.2d 195.) "Whether a jury waiver is knowingly and understandingly made depends on the particular facts and circumstances of each case." (*People v. Brown* (1977), 50 Ill. App. 3d 348, 351, 365 N.E.2d 907.) It is preferred that a waiver only be accepted when, after being advised by the court, defendant personally waives his right either in writing or in open court for the record (*People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762) but "[a] jury waiver will not be held invalid where a defendant unambiguously chooses a bench trial with his counsel at his side unless some prejudice to defendant is alleged and proved." *People v. Akis* (1976), 63 Ill. 2d 296, 300, 347 N.E.2d 733.

Defendant argues that his written waiver cannot be binding upon him because the record does not show that it was translated for him or explained to him in any way. Even were we to discount the reliability of

the signed waiver form, the record shows defendant replied in the affirmative after the court twice asked him wheher he wished to waive a jury trial. Defendant offers no proof that he failed to comprehend the exchange.

■■ Moreover, it has been held that when a linguistic handicap of a witness is at issue the reviewing court, which has before it only the written record, should accord more than ordinary deference to the conclusions of the trial judge, who observed the witness' demeanor and gestures and heard possibly important variables of inflection and emphasis. (*People v. Niebes* (1979), 69 Ill. App. 3d 381, 387 N.E.2d 800.) We conclude that such a deferential level of review applies here. The trial judge could see defendant's reaction to the question and could determine whether the response was a knowing one. We will not now conclude otherwise.

Defendant next contends that incompetent representation by his court-appointed counsel entitles him to a new trial.

■■ Competency is determined from the totality of counsel's conduct at trial. (*People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677.) It is well settled that "[i]n order to establish incompetency of appointed counsel, the defendant is required to establish actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney which results in substantial prejudice without which the outcome would probably have been different." (*People v. Carlson* (1980), 79 Ill. 2d 564, 584-85, 404 N.E.2d 233; *People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203.) A defendant is entitled to competent, but not perfect representation. *People v. Hines* (1975), 34 Ill. App. 3d 97, 339 N.E.2d 489.

With that standard in mind, we review those instances which, defendant contends, evidenced counsel's incompetency.

Prior to trial defense counsel did not move to suppress statements made by defendant to police while awaiting treatment in the hospital emergency room. Defendant argues that the voluntariness of a waiver of his right to remain silent by one in the condition in which defendant found himself is suspect. Moreover, at that time his rights had been read to him in English, not Spanish.

■■ Whether or not a motion to suppress should be filed is a matter of trial tactics and almost invariably has no bearing on the issues of competency of counsel. (*People v. Hines*.) Defendant has not shown that this omission demonstrates incompetent representation. He has not shown that such a motion would have been granted, nor that the outcome of the trial would have been different had such a motion been granted.

Defense counsel also did not object to the admission of certain exhibits into evidence, a .25-caliber semiautomatic pistol, some spent shells and some live rounds of the same caliber as the pistol, although the State had not established an unbroken chain of custody of those items.

Counsel also failed to object to hearsay testimony of a State's witness, Detective Short, concerning the results of FBI testing of these items, which, the witness stated, established that certain .25-caliber shells found at the apartment fit defendant's gun. The judge stated at the conclusion of the trial that he considered this "rather serious evidence." Further, counsel did not object to opinion testimony of the detective regarding apparent bullet holes, powder burn residue and the trajectory of bullets although he was not qualified as an expert witness. The trial court gave much weight to the existence of bullet holes in the apartment.

We first note that although Detective Short was not qualified as a ballistics expert, he was qualified to testify that certain holes in the wall, the ceiling and a curtain appeared to be bullet holes. The detective was not asked his opinion as a ballistics expert, and he did not purport to offer it as such. Additionally, Bobbie Wyatt had testified that these holes had not existed before the night in question. We do agree that the detective's testimony regarding the FBI report was inadmissible hearsay and that the State failed to establish an unbroken chain of custody of certain exhibits.

It has been recognized that "incompetency is not established by mere failure to object to inadmissible evidence." (*People v. Murphy*, at 438.) We cannot conclude that had defense counsel objected to this evidence the outcome of the case would have been different. Substantial prejudice from error by counsel may not be based on conjecture. (*People v. Jackson* (1979), 79 Ill. App. 3d 698, 398 N.E.2d 959). Even without the testimony regarding the FBI report and the admission of the exhibits the evidence of defendant's guilt is overwhelming. Therefore we conclude that these errors by defense counsel were not of such magnitude that they affected the outcome of the trial.

Defendant next contends that counsel failed to object to testimony for whose admission the State had not laid proper foundation. This testimony, by the Rochelle police officers and the interpreter, consisted of alleged oral statements by defendant. We have reviewed the record and see no impropriety in the State's presentation of this testimony and conclude no objection was warranted.

At the sentencing hearing defense counsel incorrectly designated a prior misdemeanor conviction of defendant as a felony conviction. Defendant contends that this misinformation affected the trial court's sentencing decision. However, the sentencing report prepared for the trial court did not specify whether that conviction was of a felony or a misdemeanor, and the judge merely stated that he was considering the fact that "[defendant] has had a previous conviction and has served time in Florida." Defendant has not demonstrated that his counsel's misstatement detrimentally affected the sentencing process.

Finally, defendant alleges incompetency is evident from his counsel's

failure to file a post-trial motion for a new trial. Where there are no substantial grounds for a new trial, however, a failure to move for one cannot demonstrate incompetency. (*People v. Cohen* (1980), 83 Ill. App. 3d 706, 404 N.E.2d 976.) As our disposition of this appeal shows, defendant has not demonstrated that he is entitled to a new trial.

■■ Considering the totality of counsel's conduct, we conclude that defendant was competently represented.

As his final assignment of error, defendant contends that the trial court failed to consider several factors in mitigation and defendant's potential for rehabilitation.

The factors in mitigation that defendant argues should have been considered are as follows:

> "(1) the defendant's criminal conduct neither caused nor threatened serious physical harm to another;
> (2) the defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another;
> (3) the defendant acted under a strong provocation;
> (4) there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
> (5) the defendant's criminal conduct was induced or facilitated by someone other than the defendant." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1(a)(1)-(a)(5).)

Defendant contends that a consideration of these factors would have induced the trial court to impose a less harsh sentence than it did.

The findings of the trial court at the close of trial belie the applicability of these factors.

Defendant also contends that the court paid no attention to matters that tend to support defendant's potential for rehabilitation, such as his family ties, employment, and education. He contends that the entire justification for the sentence was retribution for commission of home invasion and for his status as an alien residing illegally in this country.

Our State constitution requires that a court consider a defendant's rehabilitative potential in setting sentence, although it need not give greater weight to that consideration than to the seriousness of the offense. *People v. Hayes* (1979), 70 Ill. App. 3d 811, 831, 388 N.E.2d 818.

At the sentencing hearing the court, weighing the factors which had a bearing upon the sentencing decision, noted that defendant showed no remorse or concern for his action. Although the court made no specific reference to rehabilitative potential, it is clear that it felt defendant's rehabilitation would not be quick in coming.

■■ The court also commented upon the fact that defendant had entered this country illegally a number of times. Although the court might have

spoken more prudently than it did, it was not improper to consider defendant's numerous illegal entries, as they evidence his lack of concern for law.

The possible range for sentencing for this crime, a Class X felony, was 6 to 30 years. We think, that as the court had properly followed sentencing procedure, the 10-year sentence it imposed was not an abuse of its discretion.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.