THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LESLIE ELLIS PUGH, Defendant-Appellant.

Second District   No. 81-154

Opinion filed June 4, 1982.

Mary Robinson and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Eugene L. Stockton, State's Attorney, of Dixon (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Following a jury trial, the defendant, Leslie Ellis Pugh, was convicted of the offense of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)) and was sentenced to a 10-year term of imprisonment. On appeal, the defendant raises two contentions of error: (1) that he was denied a fair trial due to an alleged discovery violation on the part of the State which was revealed during the presentation of the State's rebuttal evidence; and (2) that he was denied the effective assistance of counsel because his privately retained attorney failed to move for a mistrial following the State's purported discovery violation, tendered an improper jury instruction, and failed to file a post-trial motion.

We summarize only the facts relevant to an understanding of the case and the issues raised on appeal. The basis of the State's case against the defendant consisted of the eyewitness testimony of two teen-age employees, Sherry Dunseth, age 15, and Tim Klenz, age 14, who were working in a grocery store located in Dixon, Illinois, on the evening of March 23, 1980, at the time of the armed robbery. They testified that at approximately 9 p.m. two black men came into the store, walked toward the back where the dairy products were located, and came back to the counter with two bottles of apple juice. Dunseth was at the cash register dusting the counter and Klenz was nearby at that time. No one else was in the store. One of the two men handed her a paper sack and said he wanted the money. The other man, later identified by both witnesses as the defendant, opened his coat up and displayed a gun in his waistband. Neither of the two men were masked, and both were clearly visible to both witnesses. After the money was given to them, approximately $125 to $140, both men left after being in the store about three or four minutes. The police were then called. No one was apprehended that evening.

The two witnesses looked at mug shots later that night but could not identify anyone. Approximately three days later, Dixon police officer Robert Short showed them additional mug shots obtained from the Freeport Police Department and both witnesses identified defendant as the man with the gun. They then went to Freeport for a lineup at which time they also selected the defendant as the armed robber. The defendant was also identified at trial by both witnesses. Neither witness had ever

seen the defendant before. They testified that the defendant now had facial hair and straighter hair, whereas on March 23, 1980, defendant had no facial hair and an afro-type hair cut.

Officer Robert Short testified as to his investigation of this armed robbery and the subsequent photo and lineup identification.

The defendant presented an alibi defense at trial in the form of the testimony of five witnesses who placed the defendant at confirmation services in St. Anne's Catholic Church in Dixon during the time frame that the robbery occurred. In particular, Mrs. Helena Spotts testified that her daughters, Maria (Tina) and Francine (Nina), departed the church at 9:15 p.m. in the company of the defendant, who was Tina's boyfriend, and Kaswick Lucas who was Nina's boyfriend. Tina and Nina Spotts testified that, following the confirmation services, they drove directly home in the company of the defendant and Lucas and that all four of them remained in the Spotts' home until the girls' parents arrived there about 10 minutes later. Tina and Nina further said that the defendant had facial hair on March 23, 1980, and Tina also stated that she and defendant had been in the grocery store before when Sherry Dunseth was working. The testimony of the defendant and Lucas basically reiterated that of Tina and Nina Spotts as to their activities that evening during the time in question. In addition, both Lucas and the defendant denied visiting the scene of the burglary on that evening.

In rebuttal, the State called Officer Robert Short as a witness on the second day of trial. When the prosecutor asked the officer whether he had been in court at 11 or 11:30 that morning, defense counsel interposed an objection and asked for a hearing in chambers. During the ensuing conference in chambers, the State's Attorney informed the court that the two eyewitnesses had observed Kaswick Lucas in the hallway of the courtroom earlier that morning and had told Officer Short that Lucas was the other individual who had participated in the robbery of the store. Counsel for the defendant objected at this point and requested that the prosecutor not be allowed to question the officer regarding this matter because the State's Attorney had not laid a foundation for the impeachment of Lucas concerning his alibi testimony. In ruling on this objection, the court stated that while the jury could not be informed of the midtrial arrest of Lucas, the rebuttal witnesses would be allowed to testify to their identification of Lucas as one of the perpetrators. Counsel then objected generally to any testimony by the rebuttal witnesses.

After the resumption of the trial, the prosecutor removed Officer Short from the witness stand and then called Dunseth and Klenz as rebuttal witnesses. Thereafter, both witnesses related that while they were sitting outside the courtroom that morning, they observed Lucas in the hallway on the defendant's side. Further, they identified Lucas as the

other person who had participated in the robbery on the evening in question. According to Dunseth and Klenz, approximately a year earlier Officer Short had shown them an array of photographs, including one of Lucas. On that occasion they informed Short that Lucas looked like one of the robbers and they were almost positive that he was one of the offenders; however, they were not sure and hence were unable to make a positive identification of Lucas based on the "mug shot" alone. In addition, they testified that Short had told them not to select Lucas' photograph unless they were positive of the identification and that if they were not able to make a positive identification, the police could not do anything. Also, Klenz stated that if Officer Short's police report indicated that he had informed the officer that Lucas was not the other perpetrator, the report was incorrect, because he had actually informed Short that although Lucas looked like the defendant's accomplice, he was not sure of the identification. Neither Dunseth nor Klenz had had occasion to view Lucas during the one-year period from the photographic session to the observance and identification of Lucas in the hallway on the second day of trial.

When recalled to the witness stand and upon refreshing his memory by examining his police report, Officer Short related that he had indicated in his report that Dunseth and Klenz had stated that Lucas was not the other suspect. He did not relate in his report that the witnesses were not sure of their identification of Lucas but rather that they informed him that Lucas was not the other offender. The officer further testified that, after viewing Lucas' photograph, the two eyewitnesses had told him that Lucas looked like the other robber but they were not sure and could not make a positive identification. On the basis of the eyewitnesses' statements to him, he eliminated Lucas as a suspect in his report. This report is not in the record and was never marked as an exhibit although it is referred to at trial by both the prosecutor and defense counsel.

The defendant's first assertion on appeal is that the State committed a discovery violation which resulted in the denial of a fair trial when it provided in discovery a police report to the defense which contained a statement of the State's two eyewitnesses which differed materially from the statements which the witnesses had actually given the police officer who prepared the report. More specifically, the defendant contends that the police report contained "an affirmative misrepresentation on a crucial matter." In this regard the defendant points out that while the report stated that the occurrence witnesses (Dunseth and Klenz), after viewing an array of photographs including that of the defendant and Kaswick Lucas, told police officer Robert Short that Lucas was not the defendant's accomplice, the two witnesses had, in fact, informed the officer that although Lucas looked like the other perpetrator, they were not sure or

positive of the identification. Continuing, the defendant notes that Lucas testified as an alibi witness for the defense; he then posits that, due to the misrepresentation in the police report, he was denied a fair trial when Dunseth and Klenz positively identified Lucas at trial as the defendant's accomplice, for the reasons that he was prevented from adequately investigating, confronting, and disputing the eyewitnesses' identification of Lucas and was hindered in the preparation of his defense due to surprise.

■■ While the defendant's counsel interposed a general objection to all rebuttal testimony regarding the identification of Kaswick Lucas as the accomplice, there was no request for a mistrial or continuance, the specific discovery violation asserted here on appeal was not referred to in the trial below, and defendant failed to file a post-trial motion. The failure to file a written post-trial motion which would specify the claims of error operates as a waiver of those issues for appellate review. (*People v. Thiel* (1981), 102 Ill. App. 3d 28, 429 N.E.2d 565; *People v. Smith* (1981), 93 Ill. App. 3d 26, 416 N.E.2d 814; see *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.) When a claim of error has not been so preserved, it will only be considered by a reviewing court under the plain error doctrine set forth in Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)). The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091.) Additionally, it is the rule with respect to a purported discovery violation that the defendant must take affirmative action to remedy a supposed discovery violation by seeking a continuance or by requesting appropriate sanctions against the prosecution; otherwise a waiver will result. (*People v. Nelson* (1980), 92 Ill. App. 3d 35, 45, 415 N.E.2d 688; *People v. Williams* (1980), 91 Ill. App. 3d 631, 633, 414 N.E.2d 1235.) In our view, this case does not qualify as an exception to these rules.

Supreme Court Rule 412(a)(i) provides, in relevant part, that the State shall disclose the following information to the defense upon written motion:

> "[T]he names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements." (73 Ill. 2d R. 412(a)(i).)

In the case at bar, both the State and the defense filed motions for discovery, with the defendant's motion containing a paragraph identical in language to that portion of Supreme Court Rule 412(a)(i) quoted above. The record reflects that the State certified it had answered the

defendant's discovery motion. It is also apparent from the record that Officer Short's report was furnished to the defendant; however, the police report itself is not in the record.

■■ ■ Generally, it is well established in criminal proceedings that the goals of the pretrial discovery provisions of Supreme Court Rule 412 (73 Ill. 2d R. 412) are to prevent surprise, unfairness, and inadequate trial preparation (*People v. Bailey* (1982), 103 Ill. App. 3d 503, 505, 431 N.E.2d 723; *People v. Patterson* (1981), 102 Ill. App. 3d 844, 847, 430 N.E.2d 574), thereby promoting the fact-finding process and eliminating the tactical advantage of surprise by either side. (*People v. Childs* (1981), 95 Ill. App. 3d 606, 613-14, 420 N.E.2d 513.) Thus, pretrial discovery affords the defense an opportunity to investigate the circumstances surrounding the making of any statements. (*People v. Weaver* (1980), 90 Ill. App. 3d 299, 305, 412 N.E.2d 1353, *appeal allowed* (1981), 83 Ill. 2d 574; *People v. Young* (1978), 59 Ill. App. 3d 254, 257, 375 N.E.2d 442.) Any errors in discovery documents should be tendered to the defense as soon as the prosecution has such knowledge. *People v. Burgin* (1979), 74 Ill. App. 3d 58, 72, 392 N.E.2d 251.

The case at bar does not present a situation where the State failed to convey a police report or other statement of a witness to the defendant in the discovery process. Rather, here the State did comply with the defendant's discovery request and furnished Officer Short's police report to defense counsel. Also, it is apparent that the present case does not involve intentional or deliberate misleading tactics on behalf of the State designed to preclude the discovery of relevant material regarding the substance of the eyewitnesses' identification statements concerning Kaswick Lucas. In addition, this case is not illustrative of a situation where inadvertence or neglect on the part of the State in not disclosing a police report hindered the defendant in preparation of his defense. (See *People v. Wilken* (1980), 89 Ill. App. 3d 1124, 412 N.E.2d 1071.) The record reflects that the State certified, well in advance of trial, that it had presented an answer to the defendant's motion for discovery. Defense counsel could have interviewed the above witnesses to ascertain the substance of the eyewitnesses' statements and reactions during the viewing of the array of photographs. In fact, the record does not indicate that defense counsel was surprised by the testimony, that he viewed it as significant enough to warrant a motion for continuance or new trial, or even that he considered it a discovery violation.

■■ Under the circumstances of this case, we do not conclude that the plain error rule can be invoked. The fact that defense counsel claimed no surprise or made any motion for continuance or for a new trial is an indication that the inaccuracy of the police report may not have hindered him in preparation of the defense of the case. Also, he adequately cross-

examined Officer Short on the difference between the officer's version of the statement of the witnesses as contained in his report and their actual statement to him. Although the police report itself is not in the record, the references to it lead us to conclude that it was not intended to be a statement in the witnesses' own words or a substantially verbatim statement which is the normal type of statement contemplated to be discovered pursuant to Rule 412(a)(i). (See *People v. Mireles* (1979), 79 Ill. App. 3d 173, 195, 398 N.E.2d 150; *People v. Witherspoon* (1979), 69 Ill. App. 3d 391, 397, 388 N.E.2d 1.) It is inevitable that inaccuracies may occur in summarizing another's statement, and here the lack of precision, although not to be condoned, still alerted the defendant far in advance of trial that Kaswick Lucas had been considered a suspect. There is no evidence of an intentional misstatement by the police officer of the witnesses' statement or any withholding of information by the prosecutor. Where prejudice is not shown by virtue of inaccurate discovery material, a new trial will not be ordered. (*People v. Outlaw* (1979), 75 Ill. App. 3d 626, 644, 394 N.E.2d 541; *People v. Burgin* (1979), 74 Ill. App. 3d 58, 72, 392 N.E.2d 251.) The evidence was not closely balanced here as the defendant was identified by two eyewitnesses; nor was the misstatement in the police report under all the facts here of such magnitude that the accused was denied a fair trial. Accordingly, we do not find this an appropriate case to invoke the plain-error rule.

The defendant's second and final contention on appeal is that he was denied the effective assistance of counsel when his privately retained attorney (1) failed to move for a mistrial following the State's alleged discovery violation, (2) tendered a jury instruction which, the defendant asserts, shifted the burden of proof to the accused, and (3) failed to file a post-trial motion. Accordingly, he maintains that he is entitled to a new trial.

With respect to the question of the alleged ineffective assistance of counsel, the defendant must establish that his privately retained attorney was actually incompetent and that this incompetence produced substantial prejudice to the defendant without which the jury's verdict would probably have been different. (*People v. Lovitz* (1981), 101 Ill. App. 3d 704, 710, 428 N.E.2d 727; *People v. Talley* (1981), 97 Ill. App. 3d 439, 443, 422 N.E.2d 1084; *People v. Scott* (1981), 94 Ill. App. 3d 159, 163, 418 N.E.2d 805; see *People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203.) Competency is determined from the totality of counsel's conduct at trial, and a defendant is entitled to competent, not perfect, representation. (*People v. Ortiz* (1981), 96 Ill. App. 3d 497, 503, 421 N.E.2d 556.) Errors in judgment or trial strategy do not establish incompetency. (*People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677.) The manner and extent of investigation in preparation for trial, of necessity, is to be

determined within the discretion of counsel, and whether defendant received effective assistance of counsel must be determined from the record. *People v. Williams* (1976), 63 Ill. 2d 371, 373, 349 N.E.2d 14.

In this case, trial counsel's totality of performance reflected preparation and thorough familiarity with the case. He cross-examined the State's witnesses, highlighting inconsistencies and memory lapses. In presenting the defendant's evidence, he refuted material aspects of the State's case as well as offering affirmative evidence of alibi. His closing argument emphasized and attacked the credibility of the State's witnesses and analyzed improbabilities in the State's case.

■■ Trial counsel's decision to proceed with the case rather than to seek a new trial when confronted with the midtrial identification of Lucas as the accomplice was a choice within the realm of trial strategy. He did object generally to all rebuttal testimony relating to the identification of Lucas as the accomplice in an effort to thwart the use of such testimony. Faced with the court's adverse ruling, he may well have concluded that it was more advantageous to the defendant to proceed with the trial and attempt to draw the inference that if the two witnesses were unsure of their identification of Lucas one year before trial they could also be mistaken in their identification of the defendant at trial. In view of all the evidence at trial, defense counsel may have believed that the better defense strategy was to proceed with the trial under that evidence. The two youthful eyewitnesses had been ably cross-examined as to their physical descriptions of the two robbers on the night of the occurrence as contrasted with the contrary description given by several defense witnesses; the defense had presented numerous witnesses placing the defendant at another location at the time of the robbery; the defense had presented impeachment evidence to rebut Sherry Dunseth's testimony that she had never before seen the defendant; and the midtrial identification of Lucas was argued to be an attempt to bolster a previous unsure identification of Lucas. Whether the evidence upon a new trial would have been more favorable is only conjecture. The fact that Mr. Spotts did not approve of the defendant and did not testify might affect the willingness of the other members of his family to testify in a retrial in view of the identification of Lucas, who was his other daughter's boyfriend, as the accomplice. Competence of trial counsel should be judged from the totality of his conduct at trial, not on the basis of what appellate counsel might have done in his stead. (*People v. Nutall* (1980), 91 Ill. App. 3d 758, 767, 415 N.E.2d 628; *People v. Ruple* (1980), 82 Ill. App. 3d 781, 786, 403 N.E.2d 129.) In this case, trial counsel's decision to proceed with the case in light of all the evidence elicited, favorable and unfavorable, rather than seek a new trial, was one of trial strategy, and under the totality of the circumstances, did not amount to incompetency of counsel.

■■ The second basis upon which the defendant relies in support of his assertion that his trial counsel rendered ineffective assistance relates to defendant's instruction No. 2, a non-IPI Criminal instruction, which was given to the jury without objection. That instruction provided as follows:

> "In deciding whether any fact has been proved, it is proper to consider the number of witnesses testifying on one side or the other as to that fact, but the number of witnesses alone is not conclusive if the testimony of the lesser number is more convincing."

The defendant's contention here is twofold: (1) that the instruction at issue, in effect, shifted to the defendant the burden of proving his innocence; and (2) that the instruction allowed the jury, "in determining whether the State had produced sufficient evidence to establish the defendant's guilt beyond a reasonable doubt, to consider the fact that the prosecution had more witnesses than the defense and to give greater weight to the prosecution's evidence by virtue of that fact."

Defendant's instruction No. 2 is not contained in IPI Criminal, but rather is an instruction in Illinois Pattern Instructions, Civil (2d ed. 1971) (IPI Civil No. 2.07) and used in civil cases. (See *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257; *Johnson v. Equipment Specialists, Inc.* (1978), 58 Ill. App. 3d 133, 373 N.E.2d 837; *Pozdro v. Dynowski* (1967), 83 Ill. App. 2d 79, 226 N.E.2d 377.) It is not a burden-of-proof instruction. (*Department of Business & Economic Development v. Baumann* (1972), 9 Ill. App. 3d 1, 291 N.E.2d 213.) Although several dated cases have considered similar instructions which comment on the number of witnesses testifying (see *People v. Oswald* (1930), 340 Ill. 434, 172 N.E. 819; *People v. Casino* (1920), 295 Ill. 204, 129 N.E. 145), these cases were decided long before pattern jury instructions were adopted in criminal cases, and the omission in IPI Criminal 2d of any instruction on this subject is an indication the jury should not be instructed thereon. We do not believe that such an instruction pertaining to the number of witnesses is appropriate especially in criminal cases where the State would ordinarily be expected to have more witnesses. It is the province of the jury to pass upon the credibility of the witnesses, and an instruction on the number of witnesses may well be misleading.

In the instant case, although we believe the trial court should not have given the instruction even at defendant's request, we do not believe that under the circumstances the instruction caused any harm to the defendant which would indicate incompetence of counsel. In the present case, although the State presented more witnesses than the defendant at trial, the State only presented two witnesses who testified to the fact that the defendant was in the grocery store between 9:05 and 9:15 on the evening in question and robbed the store. On the other hand, the defendant offered the testimony of five alibi witnesses, including himself, regarding

his whereabouts during the 10-minute span. Four of those witnesses also testified that the defendant did not visit the scene of the crime that evening during the time frame at issue. Thus, the defense actually presented more witnesses regarding the crucial factual issue of the defendant's whereabouts and actions on the evening in question. Accordingly, the instruction at issue inured to the benefit of the defendant, not to his detriment.

Nor do we believe the instruction shifted to the defendant the burden of proving his innocence. The trial court gave IPI Criminal No. 2.03 (1968) on the presumption of innocence and the State's burden of proof. The jurors were also given the general instruction to follow all the instructions and not single out certain instructions disregarding others. Instructions must be viewed in the context of the entire charge. (*People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) Accordingly, under the facts here defense counsel cannot reasonably be viewed as incompetent in tendering this instruction.

The third ground which the defendant claims established ineffective assistance of counsel was his trial attorney's failure to file a post-trial motion preserving the discovery violation and instructional issues for appellate review. While it is true that defense counsel did not file a post-trial motion in the case at bar, it is equally manifest that this failure does not establish ineffective assistance of counsel, because, as explained above, the two issues in question do not constitute meritorious assignments of error. (See *People v. Ortiz* (1981), 96 Ill. App. 3d 497, 505, 421 N.E.2d 556; *People v. Cohen* (1980), 83 Ill. App. 3d 706, 710, 404 N.E.2d 976.) Considering the totality of counsel's conduct, we conclude that defendant was competently represented.

Affirmed.

VAN DEUSEN and NASH, JJ., concur.