THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM LEE MILLER, Defendant-Appellant.

Second District   No. 79—47

Opinion filed December 27, 1983.

G. Joseph Weller and Joel Teibloom, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Charles W. Smith and Ray McKoski, Assistant State's Attorneys, and Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, William Lee Miller, was found guilty in a jury trial of the unlawful delivery of a controlled substance (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(b)), and was sentenced to a six-year term of imprisonment and fined $6,000.

Defendant raises the following issues on appeal: (1) that he was denied a fair trial by a remark made in the prosecutor's opening statement and by an answer of a State witness which was objected to and sustained; (2) that he was denied a fair trial as a result of a preju-

dicial article in a newspaper found in the possession of a juror; (3) that the prosecutor's closing argument contained certain prejudicial comments; and (4) that this court should remand for a hearing on defendant's ability to pay the $6,000 fine.

Since the sufficiency of the evidence is not raised on appeal, we summarize only the evidence and proceedings below which are necessary for an understanding of the case and the issues presented for our review.

Defendant was charged in an indictment with unlawful delivery of less than 30 grams of a controlled substance, heroin, alleged to have occurred on March 6, 1978. Immediately prior to the jury trial commencing, defendant made an oral motion *in limine* to prohibit the State from mentioning anything in opening statement or trial relative to any other offenses committed by the defendant. After some discussion, the motion was granted although the court indicated the State could show that the alleged sale on March 6, 1978, was agreed upon on a previous occasion and what the terms of that agreement were. In his opening statement, the prosecutor, in detailing the sale on March 6, began relating a conversation an undercover agent had with the defendant at the end of the sale about "future availability of heroin." An objection by defendant was sustained by the trial court, and the jury was admonished that what the State's attorney said was not evidence. A motion for mistrial was denied.

At trial, the State's witnesses testified that James Warren, an undercover agent, went to the Rib Pit, a restaurant owned by defendant, on March 6, 1978; that Warren talked with LeRoy Williams, the cook at the restaurant, who made a telephone call and defendant arrived in the area shortly thereafter; that defendant first went into a pool hall, purportedly also owned by defendant, just down the street, for about 30 seconds; that defendant then came to the Rib Pit and Warren and defendant went into the back room; that defendant asked where the TV set was and Warren went to his car, picked up the TV set and placed it on the floor in the back room; that defendant examined the TV set and then told Warren to go to the pool hall and pick up the package; that Warren went to the pool hall and observed one individual there; that the individual gave Warren six tinfoil packets, later determined to be 1.92 grams of a substance containing heroin, and six $5 bills; and that Warren left the pool hall, talked with defendant briefly, and then left the area. Other law enforcement officers had Warren under surveillance and observed portions of defendant's and Warren's actions.

During the prosecutor's direct examination of the witness, Warren

responded that the decision to use the TV set as a "prop" item was because that was "the *modus operandi* of the defendant." Defendant's objection to this answer was sustained and the jury was instructed to disregard the answer. When the State later, outside the presence of the jury, sought to allow Warren to testify to a prior conversation with defendant in which the sale of heroin was set up in exchange for the TV set, the court disallowed the evidence on the basis it should have been introduced earlier in Warren's testimony.

At the close of the State's evidence, defendant's attorney told the court he had seen an article in the Waukegan News-Sun very derogatory to defendant. After a discussion on other matters and after the defendant in open court rested without presenting any witnesses, the matter of the News-Sun article was again raised by defendant. The record indicates that defendant's attorney requested that the court have its bailiff find out whether a copy of the News-Sun was in the jury room. The bailiff found one copy of the News-Sun in the possession of one of the jurors. A discussion ensued between the court and the State's attorney and defense attorney. It was not determined whether the juror, or any other juror, had read the article. The prosecutor recommended that they *voir dire* the jurors at that time. The court stated it did not know who the juror was who had the newspaper, but they could ascertain this. Defendant's counsel stated he did not want to do it then and draw undue attention to it. The court agreed with that reasoning. The defendant's motion for a mistrial on the basis of the article was denied, and the court stated the defendant could renew the motion later in the form of a motion for new trial, should he wish, and a hearing would be held on any prejudicial effect of the article on the jurors. No further mention is made in the record of this issue nor was it raised in defendant's written motion for a new trial.

The News-Sun, dated September 15, 1978, the same date as the last day of trial, contained an article on page two, which recounted portions of the trial and further stated, in substance, that defendant was arrested following a three-month investigation by police who believed he was one of the area's chief suppliers of hard drugs; that defendant was awaiting trial on charges stemming from three other alleged "buys" which were not then being presented to the jurors; and that defendant was acquitted the previous December of delivering heroin to a police informant.

Following closing arguments, during which defendant objected to the prosecutor's references to the uncontradicted nature of the evidence and the defendant's power to subpoena LeRoy Williams, a cook

at defendant's restaurant, the defendant was found guilty by the jury. He was sentenced to a six-year term of imprisonment and fined $6,000.

■ Defendant contends that he should be granted a new trial due to two instances of improper suggestions by the State that he committed uncharged offenses. One of these, he maintains, occurred during the prosecutor's opening statement when, in detailing the alleged sale, the prosecutor stated the defendant and Warren, the undercover agent, discussed future availability of heroin. The trial court had previously granted defendant's motion *in limine* prohibiting the State from mentioning anything relative to other offenses committed by defendant.

Generally, evidence of other crimes is inadmissible if relevant merely to establish the defendant's propensity to commit crime. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238.) However, evidence of the commission of other crimes is admissible when such evidence is relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake; and it has been held that evidence of other offenses is admissible if it is relevant for any other purpose than to show the propensity to commit crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821.) In *People v. Hill* (1978), 56 Ill. App. 3d 510, 512, 371 N.E.2d 1257, the appellate court held that a statement about a future sale made in the context of the transaction upon which he was being tried was relevant to his present state of mind and his intent and knowledge at the time of that transaction.

Thus, we conclude, the statement purportedly made by defendant about future availability of heroin should have been admissible in evidence. Further, since the trial court sustained defendant's objection to this comment in the prosecutor's opening statement and informed the jury opening statements were not evidence, even if the prosecutor's comment was improper, we find no reversible error under these circumstances. (See *People v. Lampton* (1982), 108 Ill. App. 3d 41, 45-46, 438 N.E.2d 915.) Moreover, an improper remark in opening statement does not constitute reversible error unless it results in substantial prejudice to defendant. *People v. Pittman* (1982), 93 Ill. 2d 169, 175-76, 442 N.E.2d 836.

■ The other instance which defendant claims suggests he committed an uncharged offense is an answer by undercover agent Warren that the decision to use a TV set as a "prop" item for purchase of heroin was the *modus operandi* of the defendant. Defendant's objection to that answer was sustained by the trial judge who then instructed the jury to disregard the answer. Normally, sustaining an im-

mediate objection by the defense and giving an appropriate instruction to the jury cures any error. (*People v. Bartall* (1983), 98 Ill. 2d 294, 317; *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233.) Under the circumstances here, where the trial court upon the urging of the defendant, rejected the prosecutor's attempt to show a prior conversation with the defendant in which the terms of the sale of heroin were agreed upon, any error in this response was harmless in light of the overwhelming evidence of defendant's guilt. *People v. Tranowski* (1960), 20 Ill. 2d 11, 16-17, 169 N.E.2d 347.

■ The next contention of error asserted on appeal is that defendant was denied a fair trial as the result of a highly prejudicial article about him appearing in a local newspaper found in the possession of one of the jurors on the last day of trial. Defendant maintains that even though it is impossible to conclude with certainty that the juror read the article, the trial court, on its own, should have conducted whatever investigation was necessary into the unfair newspaper article.

We believe the news article was highly prejudicial as it referred to defendant as "one of the area's chief suppliers of hard drugs" and disclosed other arrests not yet tried and his acquittal of a previous drug charge. It is also evident from this record that the court bailiff, at defendant's request after he learned of the article, went to the jury room to find out if there was a copy of the pertinent newspaper in the jury room and found one copy in the possession of a juror. Because of the procedures which then followed, which we shall discuss below, it cannot be determined on this record whether this juror, or any other juror, read the article in the newspaper. Nor can it be determined whether the juror who possessed the newspaper was one of the 12 jurors, or one of the two alternate jurors.

When this information came to the attention of defendant's counsel, he moved for a mistrial. In the discussion between the court and both counsel which followed, the prosecutor recommended that the court *voir dire* the jury to determine if they had read or heard anything in reference to the case. The court expressed concern that a delay would be caused by this procedure, and then remarked it did not know who the juror was but could ascertain this. Defendant's counsel then responded that "I don't want to do it now and draw undue attention to it." The court agreed with defendant's counsel, cut off the prosecutor's further response which appeared to again suggest any assignment of error in this regard should be dealt with then, commented that defense counsel could bring this up at a later date in a motion for new trial, and denied the motion for mistrial.

This matter was never again referred to in the proceedings below, nor was this point raised in defendant's two written post-trial motions or commented on in the hearing on the post-trial motions.

The State initially contends that the defendant's failure to specifically raise this issue in a post-trial motion waives this issue for review. (See *People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739.) Generally, this is true, but the waiver rule is not absolute. Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)) provides an exception to this rule of waiver where there has been "plain error." The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091.) While the evidence here is not closely balanced, the complained-of newspaper article was highly prejudicial, and we shall therefore examine that issue as it was presented and ruled upon below.

The examination of this issue with our acknowledgement of the highly prejudicial nature of the article, however, must be undertaken within the framework of another well-established principle of law. An accused may not ask the court to proceed in a given manner and then assign as error in a court of review the ruling or action which he procured. (*People v. Heard* (1947), 396 Ill. 215, 219-20, 71 N.E.2d 321; *People v. Ficarrotta* (1943), 385 Ill. 108, 110-11, 52 N.E.2d 165; see also *People v. Spates* (1979), 77 Ill. 2d 193, 198, 395 N.E.2d 563; *People v. Clark* (1972), 52 Ill. 2d 374, 391-92, 288 N.E.2d 363; *People v. Mills* (1968), 40 Ill. 2d 4, 14, 237 N.E.2d 697.) Sometimes this rule is expressed in terms of waiver by a defendant acquiescing in a procedure not objected to at trial. (See *People v. McTush* (1980), 81 Ill. 2d 513, 520-21, 410 N.E.2d 861.) Also, in *People v. Flowers* (1977), 52 Ill. App. 3d 430, 437-38, 367 N.E.2d 389, the appellate court stated that the failure of defendant's attorney to question a juror who said during trial that he had a problem is an estoppel on appeal from arguing as error that the court precluded exposure of the juror's problem.

Here, defendant could have requested that the trial court *voir dire* the jury at the time the newspaper was discovered in the possession of one of the jurors. This is the practice most frequently utilized. (See, *e.g., People v. Hryciuk* (1954), 5 Ill. 2d 176, 125 N.E.2d 61; *People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806; see *People v. Crowder* (1981), 99 Ill. App. 3d 500, 425 N.E.2d 994.) Had this been done, and had a juror been discovered who had read the prejudicial article, the prejudice may have been cured by removal of that juror and replacement by an alternate juror. (See, *e.g., People v. Patterson*

(1980), 90 Ill. App. 3d 775, 413 N.E.2d 1371.) Instead, defense counsel made a conscious decision to forego this procedure and never again raised the issue. On this record it is left to speculation whether the article had been read by one of the jurors and whether that juror was one of the 12 of the panel or an alternate juror. The fact that defense counsel did not further pursue this point in the court below may also be susceptible to an interpretation that he later became satisfied that no juror had read the article. We also note that on numerous occasions the trial court admonished the jurors not to discuss this case with anyone or among themselves although no specific reference was made to refrain from reading news articles about the case. Under these circumstances, the defendant is precluded on appeal from arguing that the trial court erred in not initiating a *voir dire* of the jurors.

■ Appellate counsel alternatively argues that defendant was denied the effective assistance of counsel by his trial counsel's failure to insist on a *voir dire* of the jurors and to raise the issue in the post-trial motions. With respect to the question of the alleged ineffective assistance of counsel, the defendant must establish that his privately retained attorney was actually incompetent and that this incompetency produced substantial prejudice to the defendant without which the jury's verdict would probably have been different. (*People v. Pugh* (1982), 106 Ill. App. 3d 901, 908, 436 N.E.2d 737.) Competency is determined from the totality of counsel's conduct at trial, and a defendant is entitled to competent, not perfect, representation. (*People v. Martin* (1983), 112 Ill. App. 3d 486, 493-94, 445 N.E.2d 795; *People v. Pugh* (1982), 106 Ill. App. 3d 901, 908, 436 N.E.2d 737.) On this appeal, the only instances of alleged incompetency of trial counsel are his failure to ask the court to *voir dire* the jury and to raise any issue in this regard in the post-trial motions.

Our review of the record reveals that trial counsel's performance reflected preparation, thorough familiarity with the case, aggressive cross-examination, and knowledge of the law. His decision to forego a *voir dire* of the jury was with the knowledge that the trial judge had expressly indicated he could bring this up again later if he so desired. This was a matter of strategy as to which hindsight frequently indicates a different course might have been preferable. (See *People v. Lewis* (1981), 88 Ill. 2d 129, 154-55, 430 N.E.2d 1346.) Incompetence is not established by erroneous or unsuccessful strategic judgments. (*People v. Kubat* (1983), 94 Ill. 2d 437, 486, 447 N.E.2d 247.) In retrospect, it would have been a better practice for trial counsel to have requested the trial judge to *voir dire* the juror at the time of discovery of the prejudicial newspaper article although it was counsel's own

opinion then that this might draw undue attention to it. Nonetheless, inasmuch as trial counsel was acutely aware of the prejudicial nature of the article and the court's willingness to allow him to bring this up later and have a hearing on a post-trial motion if a juror was later determined to have read the article, it is entirely speculative on this record that a juror, in fact, read the article. Considering the overall high caliber of the representation afforded defendant at trial and the absence of any prejudice to the defendant which can be affirmatively shown on this record that any juror in fact read the article, we cannot say defendant was denied effective assistance of counsel.

■ Defendant next contends that he was denied a fair trial by the prosecutor's remarks in his final argument, which twice referred to the uncontradicted nature of the State's case and also pointed out that defendant could have subpoenaed a particular witness. Defendant maintains that such remarks violate the presumption of innocence and his privilege against self-incrimination.

The appropriate test for determining whether a defendant's right to remain silent has been violated is whether the reference was intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350, 438 N.E.2d 180; *People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283.) The prosecutor may comment on the uncontradicted nature of the State's case. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 584, 304 N.E.2d 630; *People v. Norman* (1963), 28 Ill. 2d 77, 81, 190 N.E.2d 819.) The two objected-to statements of the prosecutor, one in his opening argument, and one in his rebuttal argument, are:

"And to that, the entire evidence is uncontradicted."

"If you want to believe that it didn't happen that way, we have no other evidence to go on. There is no other sworn testimony other than what Jim Warren gave you."

We note that an objection was sustained to the second reference. Two other references to the uncontradicted evidence were made by the prosecutor which were not objected to or raised on appeal, and are waived. (*People v. Harrison* (1982), 106 Ill. App. 3d 341, 349, 435 N.E.2d 1211.) We find under the appropriate test and cases cited above that on this record these remarks were permissible and not intended to direct the attention of the jury to defendant's neglect to avail himself of his legal right to testify. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350, 438 N.E.2d 180; *People v. Harrison* (1982), 106 Ill. App. 3d 341, 349, 435 N.E.2d 1211.) We also observe that the jury was instructed that "the fact that the defendant did not testify should

not be considered by you in any way in arriving at your verdict." The prosecutor's remarks did not deprive defendant of a fair trial.

■ Defendant also maintains that it was error to comment on the defendant's failure to call a witness who was also accessible to the State when the prosecutor argued:

> "He says why don't we have LeRoy Williams here. The defense has the power to subpoena him. The evidence is that LeRoy Williams was the defendant's employee."

This comment by the prosecutor was made in his rebuttal argument. The defendant's counsel had previously argued that:

> "Why wouldn't they at least bring in the cook, Mr. Williams, to say yes, there was a phone call, I saw this, saw that."

The evidence at trial was that LeRoy Williams was a cook at defendant's restaurant on the day of the sale of heroin and made a telephone call when asked by Warren if defendant was in the area.

Generally, it is improper for the prosecution to comment on a defendant's failure to present witnesses which are as accessible to the State as they are to the defendant. (*People v. Scaggs* (1982), 111 Ill. App. 3d 633, 636, 444 N.E.2d 674; see also *People v. Beller* (1979), 74 Ill. 2d 514, 526, 386 N.E.2d 857.) However, a defendant cannot ordinarily claim error where the prosecutor's remarks are in reply to and may be said to have been invited by defense counsel's argument. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350-51, 438 N.E.2d 180.) Here, in the context in which the prosecutor's argument was made, the comment was proper rebuttal invited by the defense counsel. (*People v. Wheeler* (1955), 5 Ill. 2d 474, 485-86, 126 N.E.2d 228; *People v. Perez* (1983), 113 Ill. App. 3d 143, 149, 446 N.E.2d 1229; *People v. McElroy* (1980), 81 Ill. App. 3d 1067, 1073-74, 401 N.E.2d 1069.) We find no error under these circumstances.

■ Defendant's final contention is that if we affirm his conviction, we should remand for further proceedings on his future ability to pay the $6,000 fine imposed on him. He maintains that the trial court, contrary to statute which requires the court in determining the amount and method of payment of a fine to consider "the financial resources and future ability of the offender to pay the fine" (Ill. Rev. Stat. 1977, ch. 38, par. 1005—9—1(c)(1)), failed to make inquiry into defendant's ability to pay this large fine. Defendant cites *People v. Morrison* (1983), 111 Ill. App. 3d 997, 444 N.E.2d 1144, as authority.

A trial judge need not specifically state that the defendant was determined to have the financial resources and ability to pay the fine; that finding is implicit in the imposition of a fine where the judge is aware of the facts which support such a determination. (*People v.*

*Ruff* (1983), 115 Ill. App. 3d 691, 695, 450 N.E.2d 1369; *People v. Bishop* (1980), 81 Ill. App. 3d 521, 524, 401 N.E.2d 648.) Here, the trial court heard evidence during the trial and sentencing hearing that defendant operated two businesses, a restaurant and a pool hall. During the proceedings below the court was aware that the defendant had posted $7,500 as 10% of his $75,000 bail. The presentence report states, *inter alia*, that defendant related he had a small personal savings account and a reasonably good salary from his barbecue business. Thus, in contrast to *People v. Morrison* (1983), 111 Ill. App. 3d 997, 444 N.E.2d 1144, the record is sufficient to support a determination that the defendant had the financial resources and future ability to pay a $6,000 fine. There is no need to remand for a hearing, and we find no abuse of discretion in the sentence imposed.

For the foregoing reasons, the judgment of conviction is affirmed.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.