THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES A. LINDNER, a/k/a James A. Lowell, Defendant-Appellant.

Second District    No. 79-24

Opinion filed February 14, 1980.

16

Thomas A. Briscoe, of Chicago, and Michael R. Fournier, of La Grange, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

James A. Lindner, a/k/a James A. Lowell, was convicted of unlawful possession of a controlled substance (tuinal) (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)) following a jury trial and sentenced to 30 months' probation plus a fine of $500. He contends on appeal that the evidence of the crime for which he was convicted was seized as the result of an unlawful arrest for an alleged armed robbery and that his motion to suppress was erroneously denied.

The armed robbery occurred at approximately 3 p.m. on February 6, 1976, at the Blue Dahlia Florist Shop in Darien. The robbery was witnessed by two employees, Michael Wyman and Frank Montrose. Officer Musial of the Darien Police Department testified at the suppression hearing. He was asked "generally" what the description of the offender was. He answered that the party had a light complexion, light brown hair, receding hairline, full moustache with a Van Dyke beard; that he was 25 to 30 years old and probably 5'9" and between 165 and 175 pounds. The record does not show from whom this description was elicited; and, in fact, the description referred to does not appear in either the testimony of Michael Wyman or Frank Montrose.

It further appears from the record that later on the same afternoon the police became aware that an automobile collision had occurred eight blocks from the scene of the robbery "in the area" of 3 p.m. One of the drivers involved in that collision, Mr. Arthur, reported the accident to the police and was interviewed by Officer Musial. Arthur told the police that the other driver identified himself as James A. Lowell of 410 W. Maple in

Hinsdale. Musial testified that Arthur told him that the other driver had a Van Dyke type of beard with a goatee and a moustache. Arthur was shown a composite drawing of the suspected robber which the police had prepared in their interview of Wyman and the officer testified that Arthur said, "That's him."

Officer Musial also testified to an interview of Wyman and Montrose on the following day. The victims were shown nine photographs of individuals resembling the composite drawing. One of the photographs was a three-year-old picture of the defendant known to the police then as James A. Lindner. The officer testified that the photograph differed from the appearance of the defendant when he was arrested in that the defendant's hair was then much shorter than the picture, was combed neatly; and although there was a moustache, both it and the beard were different in the length and neatness, and the hair was also a distinguishing factor.

Officer Bowen testified that when shown defendant's photograph Montrose stated that it was similar to the robber but "he's not the one." Bowen further testified that he so informed Officers Abma and Musial.

On February 9 Wyman signed a criminal complaint charging James A. Lowell with armed robbery. Officers Abma and Musial presented a complaint before a judicial officer to obtain an arrest warrant. It is agreed that no evidence bearing on the issue of probable cause was presented to the judge beyond the conclusory allegations of the complaint. Neither Officers Abma nor Musial testified, and no mention was made of the traffic accident involving defendant and Mr. Arthur, or of the fact that the victim had not identified Lindner's photograph.

Later on February 9, Abma, Musial and two other police officers staked out defendant's home at 410 W. Maple in Hinsdale for the purpose of serving the arrest warrant. When defendant drove into the driveway and exited his vehicle, he was placed under arrest for armed robbery. In a search incident to that arrest a plastic bag containing 25 capsules of tuinal was uncovered and immediately seized. Defendant was charged with the unlawful possession of the controlled substance by complaint dated February 9, 1976. On March 22, 1976, the armed robbery charge for which defendant was originally arrested was nolle prossed on the State's own motion. On April 26, 1976, an information was filed charging the defendant with the controlled substance violation to which defendant pleaded not guilty and filed the motion to suppress. After the hearing on the motion to suppress the hearing judge declared the arrest warrant invalid for the reason that it contained only conclusory allegations that defendant committed the armed robbery but denied the motion to suppress the evidence on the ground that the police had independent probable cause to arrest defendant.

Defendant first argues that, given the trial court's determination that the arrest warrant was invalid, it follows that the arrest was unlawful since the officers acquired no additional data supporting an independent probable cause arrest after the issuance of the warrant. This argument must be rejected.

■■ It is, of course, true that in passing on the validity of the warrant the reviewing court may consider only the information brought to the attention of the judicial officer issuing the warrant. (See *Aguilar v. Texas* (1964), 378 U.S. 108, 109 n.1, 12 L. Ed. 2d 723, 725 n.1, 84 S. Ct. 1509, 1511 n.1; *Whiteley v. Warden, Wyoming State Penitentiary* (1971), 401 U.S. 560, 565 n.8, 28 L. Ed. 2d 306, 311 n.8, 91 S. Ct. 1031, 1035 n.8.) However, both the Illinois statute (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c)) and the ·Federal Constitution (*United States v. Watson* (1976), 423 U.S. 411, 423-24, 46 L. Ed. 2d 598, 609, 96 S. Ct. 820, 827-28) permit duly licensed law enforcement officers to make warrantless arrests even though exigent circumstances do not exist and there is adequate opportunity for a warrant to be obtained. Further, where probable cause for a warrantless arrest exists it follows that an arrest is not invalidated because made pursuant to an invalid warrant. See *United States v. Fernandez-Guzman* (7th Cir. 1978), 577 F.2d 1093, 1098-99; *United States v. Rose* (8th Cir. 1976), 541 F.2d 750, 756; 2 W. LaFave, Search and Seizure §5.1, at 255 (1978). See also *Miller v. People* (1961), 23 Ill. 2d 420, 424; *People v. Evans* (1978), 57 Ill. App. 3d 1044, 1051; *People v. Davis* (1974), 20 Ill. App. 3d 948, 956.

■■ The defendant attempts to distinguish *Watson* on the ground that the arrest was in a public place rather than on private property as here. The distinction is unpersuasive, however, since what is public and private under the fourth amendment is not defined by common law concepts of property. (*United States v. Santana* (1976), 427 U.S. 38, 42, 49 L. Ed. 2d 300, 305, 96 S. Ct. 2406, 2409.) Rather, the question is whether defendant was arrested in a place where he had a reasonable expectation of privacy. (*Santana*, 427 U.S. 38, 42, 49 L. Ed. 2d 300, 305, 96 S. Ct. 2406, 2409.) In *Santana* the Supreme Court held that a defendant has no expectation of privacy while standing in the doorway of his private residence, and it follows that he can have no greater expectation while standing outside in his driveway. See also 1 LaFave, Search and Seizure §2.3, at 304, 323 (1978); *United States v. Magana* (9th Cir. 1975), 512 F.2d 1169.

Defendant's further argument that to allow the officers to claim reliance on information which they knew but did not offer to the judicial officer issuing the warrant would invite "after-the-event" justification for the arrest and search. This is, of course, a possibility which must be taken into account in assessing the credibility of the officer's testimony. Here, the trial court specifically found that the information which they claimed

as independent probable cause was known to the officers at the time of the arrest and that the officers acted in good faith.

The defendant further argues that in any event the arresting officers lacked independent probable cause to make an arrest because the two eyewitnesses to the robbery failed to identify a photograph of the defendant and because the defendant was not engaged in any activity giving rise to probable cause at the time of the automobile accident after which the composite drawing was identified by Arthur.

The nonidentification by the eyewitnesses is relevant only if the police knew that James Lindner, the name on the photo, and James Lowell, the name given by Mr. Arthur to the police, were the same person prior to the arrest. In the order denying defendant's motion to suppress, the hearing judge found no evidence that the police did know that fact. Even if they did know, the hearing judge reasoned that due to the differences between the old photograph and defendant's present appearance and the officers' own observation of defendant's resemblance to the composite, the nonidentification did not destroy probable cause.

It is clear that probable cause exists for an arrest when the totality of facts and circumstances known to the officers at the time of the arrest is sufficient to justify a person of reasonable caution in believing that an offense has been committed and that the person arrested has committed it. *People v. Robinson* (1976), 62 Ill. 2d 273, 276.

Here, the facts and circumstances known to Officers Musial and Abma included: knowledge that an armed robbery had been committed; that a witness to the robbery had aided in the design of a composite sketch of the suspect which, although it is not presently in the record, apparently showed a white male, light complexion with light brown hair, receding hairline, full moustache and Van Dyke style beard; with further information that the robber was 25 to 30 years old, 5'9" tall and between 165 and 175 pounds; information from a citizen that he had been involved in an automobile accident shortly after the time of the robbery and about a mile away from the place of the robbery with a man whose description resembled the composite sketch; and that the defendant at the time of the arrest looked "quite a bit like" the composite drawing. There is, however, evidence that the officers knew, or reasonably could have known, that Lindner and Lowell were the same person. Musial testified that before the arrest he knew that Lindner was registered to the address they had for Lowell. Abma testified he was aware that Lowell and Lindner "resided allegedly at the same place." Also, both officers testified that they attempted to obtain a recent photo of Lindner before the arrest, even though his photograph had not been identified by anyone.

Assuming that the officers reasonably should have known that two persons with the same description living at the same address might be the

same individual, then the nonidentification of Lindner's photograph becomes relevant.

The nonidentification does not significantly detract from probable cause for the reasons given by the hearing judge. The arresting officers testified in detail to the changes in defendant's appearance since the three-year-old photograph. Also, they testified that defendant closely resembled the composite drawing of the robber prepared by Michael Wyman. It would not have been unreasonable to conclude that the victims failed to identify the old photograph due to the changes in the facial hair and head hair of defendant.

The fact that defendant acted normally at the scene of the accident with Arthur under the circumstances neither added to nor detracted from probable cause.

Probable cause is a flexible concept which in one sense must be assessed differently in light of the unique circumstances of a given arrest. Where police are given a fairly detailed description of an offender and a defendant matching the description is somehow placed in the area of the crime at roughly the same time, the courts have found probable cause was present. *People v. Lakins* (1977), 52 Ill. App. 3d 284, 287; *People v. Jenkins* (1975), 31 Ill. App. 3d 910, 915-16 (involving a composite sketch); *People v. Ward* (1979), 73 Ill. App. 3d 1001, 1011.

■■ The trial judge who observed the witnesses was in the best position to assess credibility and resolve ambiguities, and we do not find his conclusion to be manifestly erroneous and thus will not disturb it. Since we find defendant was legally arrested, the evidence seized was properly admitted and the judgment is affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.