THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAVERICK TYLER, JR., Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMMIE TYLER, Defendant-Appellant.

Second District   Nos. 83—401, 83—402 cons.

Opinion filed November 26, 1984.—Rehearing denied December 31, 1984.

Dennis M. Doherty, of Chicago, for appellants.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is the consolidated appeal of Maverick Tyler, Jr., and Sammie Tyler who, together with Charles Campbell, their sister's common law husband, robbed two sailors in North Chicago, grievously injuring one with a shotgun blast. Campbell's convictions in a separate appeal were vacated in part, affirmed in part, and the cause remanded with directions. (*People v. Campbell* (1984), 126 Ill. App. 3d 1028.) The Tylers were tried separately on Lake County indictments charging them with one count each of attempted murder, aggravated battery (while armed with a dangerous weapon), and armed violence (caused great bodily harm while armed with a dangerous weapon), and two counts of armed robbery. (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4(a), 9—1(a)(1), 12—4(b)(1), 12—4(a), 33A—2, and 18—2.) Each defendant was convicted by a jury of all counts except attempted murder, and was sentenced to the Department of Corrections for concurrent terms of 20 years for armed robbery, 20 years for armed violence, and five years for aggravated battery.

They jointly contend there was no probable cause for their arrest and the statements flowing therefrom should have been suppressed, and that their sentences are excessive. Individually, Sammie Tyler

contends numerous trial errors cumulatively deprived him of a fair trial, and that the wilful destruction by police of notes made during his interrogation deprived him of due process. Maverick Tyler contends denial of transcripts and a continuance violated the *Brady* rule and deprived him of the effective assistance of counsel, his motion to exclude in-court identification should have been allowed or hearing granted, and admission of a photograph of the victim's shotgun wound deprived him of a fair trial.

Facts common to both trials show the following sequence of events. Two sailors stationed at Great Lakes Naval Center in North Chicago, Kenneth Kleinworth and Joseph Craig Dindlebeck, were returning to the base about 10:30 p.m. on September 15, 1982. It was payday for the two men, and they had been on their way to a bar on the "strip," but decided to return to base instead so Kleinworth could prepare for a test the next day. Earlier they had been out "cruising" with another person named Jennings, and the three had shared a six-pack of beer.

As they walked southbound on Sheridan Road and approached the viaduct near 19th Street, they noticed three black men at the top by the Elgin, Joliet & Eastern Ry. Co. tracks. One of the men was holding what Kleinworth and Dindlebeck thought was a stick. They soon realized the stick was a sawed-off shotgun when the three men ran down from the tracks toward them and announced a robbery. Charles Campbell was identified as the gunman from mug shots and at his trial by both Dindlebeck and Kleinworth, but neither of the sailors could identify Sammie or Maverick Tyler from police mug shots or a photographic line-up. Kleinworth, however, later identified Maverick Tyler in court over the defendant's objection as being the unarmed assailant who was wearing a baseball cap which was later found at the scene. Kleinworth testified he had not seen any of the defendants since September 15, except that earlier on the day of trial, at the courthouse, he by chance sat down two chairs away from Maverick Tyler and recognized him as the one who had worn the baseball cap which was admitted at trial.

Campbell was identified as having pointed the shotgun at Kleinworth and repeatedly jabbed at him with the gun, prodding him toward the bushes, threatening to shoot him if he did not move. Meanwhile, the other two robbers jumped Dindlebeck, knocking his glasses off, and took his wallet containing approximately $20. When Kleinworth did not give up his money as demanded, Campbell shot him in the upper inside left thigh, rolled him up enough from his fallen position to reach his wallet, took it, and all three fled. Dindle-

beck testified a second shot was fired at him as the robbers ran.

It was stipulated at both defendants' trials that the testimony of the treating physician, if called to testify, would be that Kleinworth suffered extensive soft tissue and nerve damage to his leg, and had lost approximately 70% use of his leg. It was also stipulated that the doctor would testify that plaintiff's exhibit No. 11, a photograph of Kleinworth's leg, accurately portrayed the injury as it appeared on September 15, 1982, and that the scar at the knee was the result of surgery performed to open circulation of blood to Kleinworth's lower leg. Kleinworth's disability rendered him unable to perform his duties required on board a ship, and proceedings for his medical discharge from the Navy were instituted.

On the date Campbell was arrested, September 30, Sammie and Maverick Tyler went to the police station and told North Chicago police detective VanDien that Campbell could not have been involved in the robbery because the three of them had been riding around Waukegan looking for women. Sammie Tyler admitted on cross-examination at his trial that he was lying when he gave that explanation. Sammie Tyler testified at his trial that he was at home drunk on the night of the robbery. At his trial, Maverick Tyler denied ever giving the explanation to VanDien that Campbell was with him and Sammie driving around looking for women. Maverick's alibi at trial was that he was with his girlfriend, Penny Malcolm, during the afternoon and into the evening hours of September 15, both of them retiring for bed about 11 p.m. Both defendants agreed on September 30 to let the police photograph them, and they left the station. Detective VanDien testified at Sammie Tyler's trial that Maverick Tyler was wearing a baseball cap on September 30. Also, at Sammie Tyler's trial, Detective VanDien testified in rebuttal that he talked with the defendants' sister, Joyce Fleming, on October 1 and that she told them that she, Campbell, Maverick and Maverick's girlfriend, Penny Malcolm, were all at home together at 1801 Victoria in North Chicago on the 15th, and that Sammie Tyler was out of town with a friend. At Sammie Tyler's trial, Joyce denied she told VanDien that Sammie Tyler was out of town. She testified he was at home, drunk, on the night of the 15th and, as noted previously, Sammie Tyler testified to that as well. Penny Malcolm, Maverick Tyler's girlfriend, testified at his trial that she and he were together on the 15th, shopping and running errands earlier in the day, and riding around, watching TV and drinking later that day until 11 p.m., when they went to bed.

Arrest warrants were secured for both defendants, and they were arrested on October 7. After being advised of their rights and signing

waiver forms, each gave a tape-recorded statement, confessing his involvement in the robbery. Each moved prior to trial to suppress his statement, but the court denied the motions. The tapes were admitted in evidence and played for the respective juries without objection at either trial, and prepared transcripts of the tapes were also admitted.

As noted, the defendants were each found guilty of all of the offenses charged except attempted murder. Further facts necessary to an understanding of the issues raised are included below.

## Motions To Quash Arrest And Suppress Evidence

Both defendants contend there was no probable cause for the issuance of warrants for their arrest and their statements resulting therefrom should have been suppressed. They argue the complaint for warrant was nothing more than complainant Detective VanDien's conclusion that the respective defendants had perpetrated the offense, and that the information supplied by him to the issuing judge was insufficient to establish probable cause to arrest. They argue the mere fact they provided statements exculpating Campbell on the basis he was with them on the evening in question cannot be used as an admission of their complicity simply because Campbell had been identified by the victims of the crime as the robber with the gun. Allowing their arrest on the basis of such an "admission" would, they posit, enable the police to arrest every positively identified defendant's alibi witness.

They additionally argue that VanDien's omission to tell the issuing judge that both victims had been shown pictures of the defendants and had not been able to identify them was deliberate, and a reckless disregard for the truth.

The State responds there was sufficient probable cause for the issuance of the arrest warrants and if probable cause is found to have been lacking for issuance of the warrants, the State alternatively argues there was nevertheless sufficient probable cause to make a warrantless arrest of the defendants. It points out the issue of VanDien's omission to inform the issuing judge of the victim's inability to identify photographs of the defendants was not specifically raised below and, as such, is waived for purposes of review.

We agree this last issue was not specifically raised below at trial or in the defendants' post-trial motion and, therefore, it is waived. (*People v. Lucas* (1981), 88 Ill. 2d 245.) Further, although we agree the record supports the defendants' contention the warrants were issued without sufficient probable cause presented to the issuing judge, we nevertheless affirm the trial court's denial of the motion to quash

and suppress on the basis there was sufficient probable cause to arrest the defendants without a warrant.

Section 107—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 107—2(1)(a), (c)) provides that a valid arrest may be made when a warrant has been issued, or there are reasonable grounds to believe that the person to be arrested is committing or has committed a crime. "Reasonable grounds" and "probable cause" are synonymous for purposes of arrest. (*People v. Davis* (1981), 98 Ill. App. 3d 461.) The legality of an arrest is tested by the presence or absence of probable cause, and not by the presence or absence of a warrant. (*People v. Weathers* (1974), 18 Ill. App. 3d 338.) A warrant for the arrest of the person complained against shall be issued if it appears from the contents of the complaint, and the examination of the complainant, that the person had committed an offense. (Ill. Rev. Stat. 1981, ch. 38, par. 107—9(c).) In passing on the validity of a warrant, the reviewing court may consider only information brought to the attention of the judicial officer issuing the warrant. (*People v. Lindner* (1980), 81 Ill. App. 3d 15; see *Aguilar v. Texas* (1964), 378 U.S. 108, 109 n.1, 12 L. Ed. 2d 723, 725 n.1, 84 S. Ct. 1509, 1511 n.1.) However, when probable cause for a warrantless arrest exists, it follows that an arrest is not invalidated because it was made pursuant to an invalid warrant. (*People v. Pierce* (1980), 88 Ill. App. 3d 1095; *People v. Lindner* (1980), 81 Ill. App. 3d 15, 18.) Because a court's pretrial ruling on a motion to suppress is not final and may be changed at any time, review of the court's ruling may include consideration of evidence received during trial after the conclusion of the suppression hearing. (*People v. Sakalas* (1980), 85 Ill. App. 3d 59, 65; *People v. Conner* (1979), 78 Ill. 2d 525, 532; *People v. Turner* (1976), 35 Ill. App. 3d 550, 567; *People v. Braden* (1966), 34 Ill. 2d 516, 520.) Probable cause for arrest is something less than evidence necessary to result in conviction (*People v. Frye* (1983), 113 Ill. App. 3d 853), and whether probable cause exists in a particular case depends on the totality of the facts and circumstances known to the officers when the arrest is made. *People v. Walls* (1980), 87 Ill. App. 3d 256.

█▄ █ In our view, the warrant issued here was invalid. Detective VanDien testified the basis for the warrant presented to the issuing judge was that (1) Campbell had been identified as the gunman by both of the robbery victims and (2) the defendants' statements on September 30 that Campbell was with them from approximately 6 p.m. on September 15 to 1 a.m. on the 16th. The record fails to show the issuing judge was advised of any other facts which would justify a conclusion that the defendants were connected in any way to the com-

mission of the crime, save for their statements, which were intended to be exculpatory of Campbell. Maverick Tyler, in fact, later denied he made the exculpatory statement, stating that he only told the police Campbell "didn't have nothing to do with it" and that they were together on the 13th or 14th, not on the 15th. Sammie Tyler, at his trial, did not deny making the statement on the 30th, but testified that he was lying when he made the statement. The facts presented were insufficient to enable the issuing judge to make an independent determination of probable cause. Consequently, the warrant issued was invalid. The record does show, however, that Detective VanDien had more than a "bare suspicion" or "hunch" that the defendants were involved in the armed robbery, and the defendants' arrests, therefore, were lawful. (*People v. Sanchez* (1982), 107 Ill. App. 3d 240; *People v. Bell* (1981), 96 Ill. App. 3d 857.) A police officer has probable cause to arrest if facts and circumstances within his knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. Sanchez* (1982), 107 Ill. App. 3d 240.) In addition to his knowledge of the facts presented to the issuing judge, VanDien was aware that three black men were involved in the robbery; one of the men other than Campbell wore a baseball cap and had a somewhat long, combed-down Afro hair style; the victims' general physical descriptions of the robbers were consistent with the defendants' physical appearances; the defendants' statements on September 30 that they were with Campbell on the 15th were contradicted by statements made the next day, October 1, when the defendants, the defendants' sisters, Brenda Tyler and Joyce Fleming, and Penny Malcolm, Maverick Tyler's girl friend, were summoned to the police station. Detective VanDien testified Joyce Fleming told him at that time that Sammie Tyler was out of town with a friend on the 15th. It was noted at the suppression hearing that Campbell had stated he was with his common law wife, Brenda Tyler, on the 15th, and that Brenda Tyler had corroborated that statement. The State argued at the hearing that such false exculpatory statements are indicative of consciousness of guilt, and differing explanations and knowledge that an explanation offered is untrue are circumstances that have been considered in determining whether there was probable cause to arrest. (See *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 770.) Further, probable cause for an arrest is based on common sense probabilities. (*People v. Sokolow* (1981), 97 Ill. App. 3d 1109.) We believe the facts known to Detective VanDien constituted sufficient probable cause for the defendants' arrests.

We conclude the arrest was validly made, even though the warrant as issued was invalid. Consequently, the defendants' statements obtained as the result of their detention need not have been suppressed. See *People v. Fox* (1982), 111 Ill. App. 3d 243.

## MOTIONS TO SUPPRESS STATEMENTS

■ Each defendant moved to suppress the statement he had made to the police after arrest, which was tape-recorded and also reduced to a typed transcript. Their motions were denied after hearing, and the jury in their respective trials listened to the tape, and was given a copy of the typed transcript.

Sammie Tyler argues his motion to suppress should have been granted because the State failed to provide a material witness at the suppression hearing. Further, he contends the court's ruling was against the manifest weight of the evidence in view of his testimony that he was intoxicated at the time he made the statement, and that the police unduly pressured him to make a statement. Maverick Tyler contends his statement should have been suppressed because promises of leniency were made, mental coercion was used, his constitutional rights were not afforded him and he was too intoxicated to have voluntarily waived them, and his allegations of police misconduct were unrebutted by the State.

The State contends Sammie Tyler has waived the material witness issue since it was not specifically included in his post-trial motion. The record shows Maverick Tyler's counsel interposed an objection during the suppression hearing argument to the absence of two witnesses he alleged were material to the voluntariness of his statement, Officer Phillips and Officer Millimaki. The State argued there the witnesses were not material since they were "in and out," Millimaki merely signed the waiver as a witness, and the defendant did not deny signing the waiver. Counsel for Sammie Tyler then stated she "would make the same argument for Officer Holderbaum, on Sammie Tyler's waiver." She failed, however, to specifically include this point in her post-trial motion, her supplemental post-trial motion, or during her argument on the motions. Consequently, it would appear the purpose of a post-trial motion—to enable to the court to reconsider and correct an alleged error—was circumvented. The court's attention was not drawn to any particular circumstances of the voluntariness of the statement which the defendant sought to have reconsidered. Nonetheless, each of the reasons argued here for reversal do go to the issue of the voluntariness of the statement, and we will consider the merits of the issue.

It is the general rule that where the voluntary nature of a confession is in issue, the State must produce all material witnesses connected with the taking of the statement or explain their absence. (*People v. Armstrong* (1972), 51 Ill. 2d 471.) The State bears the burden of proving the voluntariness of the defendant's confession (*People v. Young* (1983), 115 Ill. App. 3d 455; *People v. Rathgeb* (1983), 113 Ill. App. 3d 943), and the court's determination of the voluntariness of a confession is to be made by the trial court based on the totality of the circumstances. (*People v. Underwood* (1982), 108 Ill. App. 3d 846.) The court is not required to be convinced beyond a reasonable doubt that the defendant's statement was voluntary. *People v. Barber* (1983), 116 Ill. App. 3d 767; *People v. Alvarez* (1981), 93 Ill. App. 3d 111.

Sammie Tyler did not allege any physical coercion; rather, that the police told him Maverick Tyler had confessed, played a portion of that tape-recorded statement to him, and said he had to tell them "[his] part of the story now." They were very persistent, and they "pressured" him to make a statement about the robbery. He admitted on cross-examination, though, that it was his idea "to go along with my [brother's confession]." Mere exhortations to tell the truth do not render a subsequent confession inadmissible. (*People v. Noe* (1980), 86 Ill. App. 3d 762.) Clearly, Holderbaum could not be considered a material witness for the reason he had participated in or had knowledge of any coercion, since the record fails to show any coercion was used.

Defendant apparently objected to his absence for the reason that Holderbaum allegedly stated that he and his brother "smelled like a liquor store," and defendant testified at the suppression hearing that he had been drinking "all day" and was intoxicated. Specifically, he testified he had been drinking on October 7 from 9 a.m. until about 12:30 p.m., when he was arrested. He had drunk one-half pint of gin and split a pint of rose wine with his brother. He also testified he was "a drinking man" and that he did a lot of drinking every day.

Intoxication is a factor which can render a statement involuntary. (*People v. Fuller* (1980), 91 Ill. App. 3d 922; *People v. Roy* (1971), 49 Ill. 2d 113.) However, the officers who questioned the defendant and recorded his statement, Detective VanDien and Officer Peters, who was also the department's breathalyzer operator, testified that defendant was neither intoxicated nor under the influence of drugs. Consequently, there was evidence presented on the issue of the defendant's sobriety, and this case is thus distinguished from other cases where the absence of the alleged material witness impeded the court's determination of voluntariness. (See *People v. Monroe* (1981),

95 Ill. App. 3d 807.) Further, it has been held that it is not necessary to call people who were in and out of the room and did not participate in taking the confession. (*People v. Curtin* (1962), 24 Ill. 2d 191.) The record indicates only VanDien, Peters, and the defendant were present when the confession was recorded, and that Holderbaum only signed as a witness on the defendant's rights-waiver form.

In our view, the statement attributed to Holderbaum was ambiguous at best, and it does not appear he had any singular opportunity to observe the defendant's condition which would have rendered his testimony helpful to the court. Further, the court here had the added advantage of listening to the defendant actually making the statement by virtue of the tape recording. The court's determination that the defendant's statement was not involuntary due to the intoxication thus had an independent basis not usually available. We conclude no reversal is warranted on the basis a material witness was not presented.

Our reading of *People v. Feagans* (1983), 118 Ill. App. 3d 991, cited by the defendant, does not warrant a different conclusion, since the court there found the missing witness was one of two officers present during the entire question-and-answer period and the giving of the statement, and he would have been able to testify as to the defendant's sobriety. Based on these same facts, we additionally find no evidence in the record which would render manifestly erroneous the court's determination that the defendant's statement was not involuntary due either to his intoxication or to police coercion. Accordingly, no reversal is warranted.

Maverick Tyler contends his statement was not voluntarily made because it was induced by a promise that VanDien would talk to the prosecutor and judge in order to secure his release on a recognizance bond; that his repeated requests to make a phone call and wishes to not make any statements were not honored; that he was too intoxicated to understand his rights and was scared and intimidated by the persistent interrogation; and that the tape recorder was started, stopped, and erased repeatedly throughout the course of his statement either at his request or of the officer's own volition. We note Maverick Tyler also contends that the possibility of probation was discussed, but he testified that this discussion occurred after the statement was given. As such, it would not affect the question of the confession's voluntariness, since the confession could not have been induced by any discussion of probation which occurred after the confession was given.

Detective VanDien specifically denied any promises or threats

were made, or that the defendant ever requested to stop making the statement, or to make a phone call. The record shows the tape was turned off twice at the defendant's request for no longer than a minute, but the officers could not recall what was said during that interim or why the tape was requested to be turned off. The record showed the tape began at 3:33 p.m. and ended at 4 p.m., a total time of 27 minutes, yet the actual running time of the tape was only 15 minutes and 21 seconds. Defendant claims the unexplained nine-minute 39-second gap—assuming two one-minute delays—renders the officers' testimony unworthy of belief, and that the physical evidence itself reveals the testimony of the officers cannot possibly be true. Defendant fails to note, however, that he himself testified as well on direct examination at the suppression hearing that the tape was turned off for about "a minute and a half" each time, and he testified the tape was interrupted three times. During that time, he testified he requested he be allowed to make a phone call. He also testified that the police turned the recorder off during the session in order to provide him with details of the robbery. He also testified that he learned some of the details of the robbery from his mother, who was present when Campbell was arrested. He testified his request to make a phone call, as well as his denials of guilt, do not appear on the tape because they were erased by the officers. Several "clicks" audible on the tape were explained by VanDien to be "[p]ossibly an ink pen on the desk, tapping on the desk, or a paper clip."

█ The trial judge heard the tape. Further, both officers denied each and every allegation of misconduct made by the defendant. They testified he was able to understand and respond to questions, he was not promised leniency, was not abused or threatened, did not request an attorney, was not provided details of the robbery by them, was not intoxicated, did not ask to stop making the statement or to make a phone call. We disagree with the defendant's contention, citing *Bucktown Partners v. Johnson* (1983), 119 Ill. App. 3d 346, that the defendant's testimony must have been accepted by the court as unimpeached and uncontradicted because the officers had no recollection of what occurred during the short time the recorder was turned off. Their inability to recall this aspect of the event is in no way comparable to the situation in *People v. Munoz* (1975), 31 Ill. App. 3d 689, cited by the defendant, where the issue was the admissibility of a past recollection recorded, and the witness had no independent recollection of either making the entry or the surrounding circumstances, and her firsthand knowledge of the event could not be established. Clearly, the officers' firsthand knowledge of the event and the surrounding cir-

cumstances here was well established. Additionally, a defendant's version of an occurrence need not be believed, even though it is the only one presented, where other facts and circumstances in the record tend to contradict that version or render it highly improbable. See *People v. Schaefer* (1980), 87 Ill. App. 3d 192; *People v. Younge* (1980), 83 Ill. App. 3d 305.

Defendant's testimony that he asked to be allowed to make phone calls and did not know anything about the robbery was contradicted by positive testimony of the officers, and rendered highly improbable by virtue of the detailed statement given by the defendant. His own testimony about the amount of time the tape recorder was turned off would still leave an unaccounted-for time gap in the interview. We believe a credibility question was presented, and that the trial judge was not required to believe the defendant's version of the events. *People v. Davis* (1983), 95 Ill. 2d 1, 25.

The record provides evidence which rebuts defendant's contention that his statement was not voluntary because he was promised a recognizance bond, was too intoxicated to understand his rights, and was scared and intimidated by the officers' interrogation. We conclude the court's judgment was not against the manifest weight of the evidence.

### FAIR TRIAL

■ Sammie Tyler contends the cumulative impact of seven trial errors deprived him of a fair trial. We agree with the State that many of these errors have been waived, since no objection was made at trial, nor were the issues specifically included in the defendant's posttrial motion. (*People v. Lucas* (1981), 88 Ill. 2d 245; *People v. Carlson* (1980), 79 Ill. 2d 564.) Nor do we find the doctrine of plain error (87 Ill. 2d R. 615(a)) should be invoked in this instance, because the evidence here was not closely balanced and the errors are not of such magnitude as to have deprived the defendant of a fair trial. (*People v. Pugh* (1982), 106 Ill. App. 3d 901; *People v. Winston* (1982), 106 Ill. App. 3d 673.) Accordingly, we consider that defendant's contention regarding the State's question to Detective VanDien whether he was "familiar" with their address and the fact that "three" people were the subject of the investigation have not been properly preserved for review and are waived.

Defendant complains Detective VanDien's testimony that the reason he was given his rights on September 30 was because he "was a suspect" was improper because it created the inference there was additional evidence, or unknown facts, inculpating him. The record

shows, however, that there were facts known as of September 30 and already presented to the jury which would have justified VanDien's belief that the defendant was a suspect. It was known the robbery involved three black men, one of whom was identified by both victims as Charles Campbell. A general description of the other two robbers was given by the victim. Campbell had been arrested earlier on September 30 and had been in custody for some time before the defendant and his brother arrived at the station at 9:30 p.m. in order to tell the police Campbell's alibi. We conclude the reference to the defendant as a suspect was not so pronounced or unlikely as to have created an undue inference that there was additional, unknown evidence of criminal conduct on the part of the defendant.

■ We agree with the State that the prosecutor's opening comment that "all three are equally guilty" was not an improper attempt to create an inference of defendant's guilt by association, nor an expression of the prosecutor's personal opinion. Taken in context, the prosecutor noted the defendant had given a statement that he, Maverick Tyler and Campbell had robbed the sailors, but that Campbell was the one with the shotgun and was the one who shot Kleinworth. The prosecutor followed this up with the statement that the concern of the instant cause was not with Campbell's or Maverick Tyler's guilt, but only with Sammie Tyler's. Further, the prosecutor stated the jury, based upon the evidence and the law, could find defendant's participation in the crime made him as responsible as everyone who participated. Clearly, the defendant was tried on the theory of accountability (Ill. Rev. Stat. 1981, ch. 38, par. 5—2), and the prosecutor's opening argument, not objected to during trial, simply conveyed that theory to the jury. The jury was, in fact, instructed on accountability, and the defendant cannot claim he was "substantially prejudiced" by the inference of his accountability. (*People v. Miller* (1983), 120 Ill. App. 3d 495, 499; *People v. Bartall* (1983), 98 Ill. 2d 294, 321.) Additionally, the defendant here has not alleged he was not proved guilty beyond a reasonable doubt. *Cf. People v. Daniels* (1979), 75 Ill. App. 3d 35 (where robbery convictions of two codefendants had to be reversed where they were not based on any evidence adduced against them, but were instead reached upon theories of accountability for actions of third codefendant, and the State did not prove that the third codefendant took a watch from the victim).

■ Sammie and Maverick Tyler both argue the photo of Kleinworth's injury was improperly admitted, albeit without objection, because whether the victim suffered "great bodily harm" was not really an issue, nor was it disputed by the defendants.

The State is entitled to introduce its full proof of the crime charged in the indictment, as long as the evidence is probative of an issue (*People v. Campbell* (1979), 77 Ill. App. 3d 804, 817; *People v. Seaberry* (1978), 63 Ill. App. 3d 718, 722), and regardless of an offer by the defendant to stipulate to certain facts. (*People v. Rachel* (1984), 123 Ill. App. 3d 600, 605; *People v. Christen* (1980), 82 Ill. App. 3d 192, 197-98.) The photo admitted here was relevant to the issue of great bodily harm, and its relevancy was not outweighed by its potential to inflame the jury against the defendants, particularly where the jury might reasonably have considered the fact that Campbell, rather than the defendants, performed the actual shooting.

■ Likewise, Sammie Tyler's related contention concerning the evidence of the extent and permanence of the victim's injury was relevant to the issue of great bodily harm, thus distinguishing it from the evidence in two cases cited by him, *People v. Johnson* (1979), 76 Ill. App. 3d 147, and *People v. Nickolopoulus* (1962), 25 Ill. 2d 451. He complains of the testimony permitted concerning the fact Kleinworth was being discharged from the Navy as the result of his injuries, and that the condition of his leg prevented him from performing his duties aboard ship. In our view, this evidence was reasonably related to the seriousness of the injury sustained, and was properly admitted. *People v. Villa* (1981), 93 Ill. App. 3d 196; *People v. Nard* (1975), 32 Ill. App. 3d 634; *People v. Swaney* (1971), 2 Ill. App. 3d 857.

We conclude Sammie Tyler was afforded a fair trial.

## DUE PROCESS VIOLATION

■ Sammie Tyler contends his right to due process was violated due to the deliberate destruction by the police of notes taken during his interrogation. The record shows Detective VanDien testified it was his procedure to take longhand notes which are then reduced to a police report, and the original notes destroyed. In this case, during the defendant's second interrogation, he made his first statement indicating his complicity in the armed robbery, and Detective VanDien took notes. However, when the defendant said he would submit to a tape recording, VanDien "just tape recorded the entire statement over again," and destroyed his notes once the tape was made. The defendant contends the notes should have been preserved so that he could have had the opportunity of seeing whether the evidence "might be helpful" in his defense.

It has been held that before a due process violation will be found, the defendant must show that the destruction was intentional *and* that the destroyed evidence was exculpatory in nature. (*People v.*

*Davis* (1981), 103 Ill. App. 3d 792; *People v. Utinans* (1977), 55 Ill. App. 3d 306.) Sammie Tyler has presented no argument that the notes contained such exculpatory material, nor does the record allow any inference that the notes would have reflected anything but a duplicate of the tape-recorded statement.

### EFFECTIVE ASSISTANCE OF COUNSEL/BRADY VIOLATION
■■ ■ Maverick Tyler contends the court's denial of his substituted counsel's motion for a continuance to permit her to obtain the report of proceedings of his suppression hearing caused him to be deprived of effective assistance of counsel and amounted to a *Brady* violation.

Initially, we note the defendant failed to raise the *Brady* issue at trial or in his post-trial motion, and the issue is waived. (*People v. Lucas* (1981), 88 Ill. 2d 245.) Further, we find no plain error. *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, held essentially that suppression by the State of evidence favorable to the accused and material to the issue of guilt upon defendant's request therefor violates due process. The suggested prejudice to the defendant here was that his counsel would be hampered in her ability to impeach Detective VanDien's testimony concerning his ability to recall the length of the period during which the tape recorder was shut off, and to impeach Dindlebeck's identification of Charles Campbell. Such impeachment would relate to the issue of VanDien's credibility, and the transcript, had it been available, would not have provided evidence which would have been favorable to the defendant and material to the issue of his guilt. Dindlebeck's testimony would only have been impeached by the suppression hearing transcript if he had been queried at trial on how positive he was about his identification of Campbell and had given an answer contrary to his pretrial testimony.

It has been held that the omitted evidence must create a reasonable doubt of guilt that did not otherwise exist before it will be considered material within the context of the Illinois discovery rule fashioned to conform with the constitutional requirements set forth in *Brady*. (87 Ill. 2d R. 412(c); *People v. Ojeda* (1980), 91 Ill. App. 3d 723.) The record shows Detective VanDien testified at the suppression hearing that the recorder was shut off for "no more than a minute" each time. At trial, he testified concerning the time period: "I believe it just to be a short period of time, but I do not recall how long it was." The availability of his prior testimony would have done little, if anything, to impeach his trial testimony on this point.

With regard to the court's denial of a continuance, we observe

that all motions for continuance are addressed to the discretion of the trial court and shall be considered in light of the diligence shown on the part of the movant. (Ill. Rev. Stat. 1981, ch. 38, par. 114—4(e); *People v. Dunigan* (1981), 96 Ill. App. 3d 799.) A continuance for grounds not stated in subsections (b) and (c) of section 114—4 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, pars. 114—4(b), (c)) may be ordered by the court upon written motion if the court finds the interests of justice so require. (Ill. Rev. Stat. 1981, ch. 38, par. 114—4(d).) The grant or denial of the continuance is a matter to be determined under the particular facts and circumstances of the case. (*People v. Hovanec* (1979), 76 Ill. App. 3d 401; *People v. Rivera* (1978), 64 Ill. App. 3d 49.) This is no less so because the continuance is sought to permit counsel's preparation for trial. (*People v. Gray* (1978), 61 Ill. App. 3d 243.) Before a reviewing court finds that a trial court abused its discretion in denying a continuance, there must be a showing that the defendant suffered actual prejudice due to the attorney's lack of adequate preparation. (*People v. Flemming* (1977), 47 Ill. App. 3d 755.) Where the record shows that the trial attorney appeared fully prepared and conducted representation of the accused with diligence and skill, courts are reluctant to find prejudice to the movant's rights from denial of the motion. (*People v. La Fiura* (1981), 92 Ill. App. 3d 714.) A court's denial of a request for additional time will not be subject to reversal absent a showing of prejudice thereby. *People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105; *People v. Peterson* (1979), 70 Ill. App. 3d 205.

What occurred here is that the defendant was originally represented by assistant public defender Randall Stewart, who resigned from the public defender's office on March 1, 1983, and became employed by the Lake County State's Attorney's office. Prior to that, Stewart had moved on January 20 for a continuance, indicating the State had tendered tape-recorded statements of the defendant and his brother Sammie Tyler on January 11, 1983. Protracted hearings concerning the admissibility of these statements, as well as other pretrial issues, were heard by the court for a period of time between January 27 and February 7, 1983. Although Stewart had been advised by the State that the instant cause would be tried before March 1, it was learned on February 24 that the case would not be reached for trial before that time. The cause was transferred to the case load of assistant public defender Joan Pantsios on February 24. Pantsios was not present for the hearings on the pretrial motions, and she ordered the transcript of the proceedings on February 28. Three days later she made an oral motion for continuance, and four days later presented a

written motion for continuance supported by affidavit indicating the suppression hearing transcripts were necessary for her preparation. The court denied the motion and the cause went to trial on March 7. The State did not oppose a continuance, as long as the cause reached trial before March 17, at which time one of the State's primary witnesses, Sailor Joseph Craig Dindlebeck, was due to be shipped out to another naval duty station.

The facts and circumstances here show a lack of diligence, in that the suppression hearing ended on February 7, yet the transcript was not ordered until February 28 by substituted appointed counsel, even though defendant's previously appointed counsel was expecting that the cause would come to trial before March 1. That the cause did not reach trial before March 1 must in part be attributed to the defendant's filing of his motion to suppress, since the defendant ordinarily is charged with such delay. (*People v. Manna* (1981), 96 Ill. App. 3d 506.) Further, when the judge denied the motion for continuance, he stated he would "see that Mr. Stewart is made available to [attorney Pantsios]." He also noted that Sammie Tyler's counsel, assistant public defender Elizabeth McClain, was present during the suppression hearing, and Pantsios could talk with her. Defendant makes no showing here that counsel availed herself of either of these two persons in order to ascertain what value the suppression hearing transcript would have to the defendant's case. Additionally, as noted above, defendant has not shown here the lack of the transcript was prejudicial to his case, nor did counsel present facts below in her motion for continuance which demonstrated the materiality of the evidence sought in order to justify the granting of the continuance. (See *People v. Moore* (1972), 51 Ill. 2d 79, *cert. denied* (1972), 409 U.S. 979, 34 L. Ed. 2d 242, 93 S. Ct. 331.) Finally, the record here shows the totality of counsel's performance at trial demonstrated skill and adequate preparation. Accordingly, we conclude the court's denial of the defendant's motion for continuance was not an abuse of discretion which caused the defendant to be deprived of his right to the effective assistance of counsel.

■■■ With regard to defendant's contention it was error for the court to deny him the transcript, we fail to find anything in the record which indicates the court was asked to make any ruling on this motion. Defense counsel stated the transcript had already been ordered, but the continuance was necessary because the transcripts had not yet been received. A court's failure to rule on a matter is not the equivalent of a denial of the relief requested, and cannot form the basis of an appeal. *Mendelson v. Lillard* (1980), 83 Ill. App. 3d 1088,

1092-93.

### In-Court Identification

██ Maverick Tyler claims it was error for the court to deny his motion *in limine* to prevent Kleinworth's in-court identification of him or, in the alternative, to fail to conduct an evidentiary hearing to establish whether there was an independent origin for the identification.

Defense counsel made the motion *in limine* just prior to resuming an afternoon session of the defendant's trial. She informed the court the prosecutor had called her and told her he had been asked by Kleinworth that morning whether one of the "two guys" who robbed Dindlebeck was in the hallway outside the courtroom. The prosecutor said, "I can't tell you that," and Kleinworth said, "I think I saw him sitting outside the courtroom." The judge granted the motion to the extent he stated he would not allow the identification to be attempted in court unless the prosecutor was certain Kleinworth would be able to make the identification.

In the company of defense counsel, the prosecutor left chambers to ask Kleinworth, "[W]as the person you saw in the hallway today one of the persons involved in the armed robbery?" Kleinworth said, "Yes." The court then denied the motion *in limine*.

The record is unclear how many persons were in the hallway at the time of the inadvertent encounter, or whether the defendant was the only black male in the hallway. In arguing her motion, defense counsel stated her "recollections of the people who were in the corridor outside this hallway this morning are that Mr. Tyler was one of the only, if not the only, black males out there."

Defense argues generally that an accused is entitled to a fair identification procedure and is deprived of due process if the totality of the circumstances of a pretrial confrontation are unnecessarily suggestive and conducive to mistaken identification. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243; *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375; *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) He contends his viewing by the witness in the courthouse hallway renders the witness's subsequent in-court identification of him questionable, similar to the situation in *People v. Goodman* (1982), 109 Ill. App. 3d 203, where it was observed, "This type of [courtroom] confrontation is fraught with dangers of suggestibility because in this setting the defendant stands accused and is presented as one whom the State suspects of being guilty of an offense." (109 Ill. App. 3d

203, 216.) The *Goodman* court also observed the United States Supreme Court's decisions have sought to establish standards which will ensure that the testimony given at trial is reliable and not so tainted by suggestive procedures as to make it likely that the witness has replaced the image of the perpetrator with that of the accused. 109 Ill. App. 3d 203, 215.

In *Goodman*, two witnesses, accompanied by a police officer, sat in the audience section of the courtroom as the defendant was brought in before the bench by sheriff's deputies for his bond hearing. Further, the court's review of the record there suggested that the witnesses' presence at the bond hearing was intentionally planned for the sole purpose of reinforcing the witnesses' prior photographic array identification of the defendant. Despite the suggestive confrontation, one of the witnesses' identifications of the defendant was found to have an independent reliable basis, and her identification testimony was admitted. The other witness's testimony was found to have been improperly admitted, since no similar independent reliable basis was shown. The cause was reversed and remanded for a new trial, however, due to other trial errors.

It was stated in *Manson v. Brathwaite*:

> "[R]eliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-Stovall confrontations. The factors to be considered are set out in Biggers. 409 US, at 199-200, 34 L Ed 2d 401, 93 S Ct 375. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." (432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.)

Clearly, the confrontation which occurred here was completely inadvertent, and the record shows care had been taken to avoid any such chance encounter during prior proceedings. It appears other persons, although perhaps not other black persons, were present in the corridor at the time of the confrontation. Although Kleinworth apparently sought confirmation from the prosecutor of the correctness of his identification, his subsequent unequivocal affirmative acknowledgment that the person in the hallway was one of the robbers makes it appear his question was more rhetorical than real. We do not consider that this chance encounter is the type of suggestive police identification

procedure which might be found violative of due process, particularly where there is no hint whatever in the record of any police or State complicity in bringing about the witness's observation of the defendant.

Additionally, we find the witness's in-court identification of the defendant had a sufficiently reliable independent basis. Kleinworth described all three robbers, including the defendant, to the police the day after the robbery, and subsequently consistently described them at the suppression hearing, and at both Sammie Tyler's and Maverick Tyler's trial. On each occasion, the one robber with the longer Afro hair style, among other aspects, was described as the one wearing the baseball hat, and Maverick Tyler was identified by Kleinworth at his trial as being that robber. It is true Kleinworth's opportunity to observe the defendant and Sammie Tyler during the robbery was limited to approximately 10 or 15 seconds. It is true Kleinworth's attention was primarily focused on Charles Campbell and at the shotgun Campbell was jabbing at him. It is also true Kleinworth failed to pick Maverick Tyler's picture out of the police mug shot books, or from a photographic array, and he was shown the picture of Maverick Tyler taken with his consent on September 30. Nevertheless, we find Kleinworth's opportunity to view Maverick Tyler during the robbery was not so limited as to render it unreliable, even though it was only for 10 or 15 seconds in duration, and the record shows the weather and lighting conditions at the time of the robbery were conducive to accurate observation. More importantly, the reliability of Kleinworth's in-court identification is significantly bolstered by his suppression hearing testimony. There he testified that at the time he was in the hospital and talked with Detective VanDien, he remembered that he had in fact seen two of the robbers before, Campbell *and the one with the baseball hat,* on the "strip." During her cross-examination of Kleinworth at Maverick Tyler's trial, counsel for Maverick Tyler was cautioned by the State against asking Kleinworth if he had ever seen the defendant before. This caution, albeit a gratuitous one on the part of the State, was prompted apparently by virtue of counsel's propounding of this same question on cross-examination to the other victim, Dindlebeck, who denied he had ever seen the defendant before. The prosecutor's caution was a reminder that if defense counsel asked Kleinworth the same question, he would say "Yes," since "at a previous hearing" Kleinworth had testified that Campbell and "one of the two Tyler brothers" had attempted to sell him drugs. Certainly, defense counsel would not have wished to broach the subject and risk the suggestion that the defendant was involved in yet other crimes.

Additionally, defense counsel was not limited in her cross-examination of Kleinworth from bringing to the jury's attention the facts surrounding the hallway identification and the fact the witness had previously been unable to identify the defendant as one of his assailants.

Lastly, we note the record shows no request for an evidentiary hearing was made by the defendant; hence, no ruling was made by the court, and no issue can arise on appeal.

In sum, we conclude the court did not err in denying defendant's motion *in limine*.

## EXCESSIVE SENTENCES

■■ Each defendant contends his sentence was excessive. However, neither specifically raises the issue framed and decided in *People v. Donaldson* (1982), 91 Ill. 2d 164. In *Donaldson*, the supreme court held that convictions for armed violence and the underlying felony cannot stand if both arise out of the same physical act.

In the cases at hand, each defendant was sentenced to a 20-year term for the offense of armed violence and each was sentenced to a five-year term for the aggravated battery, all sentences to be served concurrently.

Campbell, the third offender, in his appeal did raise this issue. (*People v. Campbell* (1984), 126 Ill. App. 3d 1028.) In *Campbell*, the State conceded that under the *Donaldson* rule the conviction and sentence for aggravated battery must be vacated. We accordingly vacated those judgments in Campbell's case. Although the issue is not directly raised by these defendants, we note the problem, and *sua sponte* vacate the conviction and sentence of each defendant for the offense of aggravated battery which, we believe, is in the interest of justice and recognizes the plain error on appeal which is within this court's discretion to rectify. 87 Ill. 2d R. 615(a).

■■ As to the issue of excessive sentence, each defendant argues that the trial judge ignored factors in mitigation and his potential for rehabilitation. These contentions are not supported by the record. Each defense counsel acknowledged the accuracy of the presentence report, and the court heard argument of factors in mitigation relevant to each defendant. Counsel for both defendants argued for a minimum sentence for the Class X offenses, the penalty for which is a determinate term between six and 30 years. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(3)). The court imposed 20-year terms for both Class X felonies.

The court stated it had considered the trial evidence, the presentence reports, the arguments of counsel and each defendant's own

statement. It specifically commented on several of the factors in mitigation and aggravation which, on balance, led to its judgment. We perceive no abuse of discretion in the record, and we may not disturb the court's judgment in this regard. (*People v. Cox* (1980), 82 Ill. 2d 268.) A defendant found guilty under an accountability theory is subject to the same penalty as though he were the primary actor, although the fact he was not the primary actor may be considered a factor in mitigation. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.1(a)(5); see *People v. Ruiz* (1982), 94 Ill. 2d 245.) The court commented specifically that severe punishment is warranted where people engage in violent activities or activities which provide a fertile medium for violence, such as in the instant case, where three men go out for an evening and one is carrying a sawed-off shotgun. We conclude the defendants' sentences were properly imposed.

In case No. 83—401 we vacate the conviction of Maverick Tyler for aggravated battery, and the balance of the judgment of the circuit court of Lake County is affirmed.

In case No. 83—402 we vacate the conviction of Sammie Tyler for aggravated battery, and the balance of the judgment of the circuit court of Lake County is affirmed.

Appeal No. 83—401: judgment vacated in part and affirmed in part.

Appeal No. 83—402: judgment vacated in part and affirmed in part.

LINDBERG and REINHARD, JJ., concur.